131 So.2d 153 (1961)
Freddie GRIFFIN, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.
No. 9509.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1961.
*154 Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, for appellant.
Mayer & Smith, Shreveport, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
Plaintiff instituted this action for workmen's compensation, alleging the serious and permanent impairment of a physical function entitling him to benefits of one hundred weeks by virtue of LSA-R.S. 23:1221(4) (p). After a trial on the merits, a judgment sustaining defendant's plea of one year prescription was rendered, from which plaintiff has perfected this appeal.
The defendant is the workmen's compensation insurer of Lane-Wells Company, *155 by whom Griffin was employed at the time of his injury. This company was in the oil well serving business which included inside as well as outside duties for its employees. Plaintiff was classified as a field operator and received a base, or guaranteed minimum, pay of $93 per week, plus a commission on work performed by him in the field.
On December 12, 1958, while unloading equipment in an oil filed in Caddo Parish, Louisiana for his employer, claimant sustained an injury to his back which was diagnosed as a ruptured intervertebral disc. He was placed in a hospital, where an operation was performed on December 18, 1958, at which time the disc was removed and a spine fusion was done, extending down to his sacrum. The operation was a success, but because of the long fusion, there was a permanent restriction in the motion of the back. However, plaintiff's physician would not release him for full duty for a period of six months following his operation. He was, therefore, paid the maximum compensation benefits from the date of his injury until May 18, 1959.
Through some discussion between the plaintiff and his employer, it was discovered if he remained off his job the full six months as recommended by his doctor, that a company rule would make claimant ineligible to receive a two weeks paid vacation. A representative of the employer, therefore, contacted plaintiff's physician in an effort to secure permission to begin his employment two weeks sooner. The doctor gave such permission provided same did not involve any heavy duties.
In accordance with this understanding, plaintiff was put to work in the shop of the employer wiring perforating guns. His classification was not changed on the company's books but his duties were admittedly of a different character, being light and requiring no heavy lifting. For this, the employee was paid his former base pay of $93 per week, which amount was slightly in excess of the wages of those classified to perform this work. Such employees were paid on an hourly basis, ranging from $1.43 to $1.95 per hour. Plaintiff performed this type of work for two weeks, or eighty hours; and then took his paid vacation for two weeks. During such period he could not have earned more than $78 per week if he had been paid on the maximum hourly rate of $1.95. On June 14, 1959, he returned to work as a field operator for Lane-Wells. After May 18, 1959, Griffin did not receive compensation payments.
This action was filed on May 27, 1960, or more than one year from the date of the last compensation payment, but less than one year from the date he received payments for the lighter work. As previously stated, the employee does not contend he is presently disabled, but the basis of the suit is the alleged permanent impairment of his back as the result of the spine fusion. Counsel for plaintiff forcefully contends the wages paid during the two weeks period appellant worked in the shop were in lieu of compensation and the prescriptive period should have begun from the date of the last payment of such. Defendant, on the other hand, argues that these wages were not gratuities, or in lieu of compensation, but were earned by the employee and, therefore, prescription began to accure on the date of the last regular compensation payment, thereby barring this action.
The question of whether wages paid subsequent to an injury are earned or paid in lieu of compensation has been before the appellate courts of this state on many occasions and under circumstances involving different legal principles, such as pleas of prematurity and prescription, exceptions of no right and no cause of action and with respect to allowance of credit for such payments as off-set against compensation due. The jurisprudence appears settled to the effect that payment of unearned wages in lieu of compensation is considered a gratuity intended by the employer and employee as a substitute for compensation benefits, and the employer is entitled to *156 credit for one week of compensation for each week such unearned wages are paid equal to or exceeding the compensation rate due the employee. It is also recognized that if wages paid a disabled employee subsequent to injury are fully earned by the employee in the performance of work of a character different from that in which the employee was engaged at the time of the injury, such wages are considered earned in a different occupation and there is no implied agreement that they are paid in lieu of compensation and are not considered as compensation for such purposes herein contended. Mottet v. Libbey-Owens-Ford Glass Co., 1952, 220 La. 653, 57 So.2d 218; White v. Calcasieu Paper Co., La.App., 1 Cir., 1957, 96 So.2d 621; Myers v. Jahncke Service, La.App.Orleans, 1955, 76 So.2d 436; Scalise v. Liberty Mutual Ins. Co., La. App., 1 Cir., 1955, 84 So.2d 88; Walters v. General Accident & Fire Assurance Corp., Ltd., La.App., 1 Cir., 1960, 119 So.2d 550; Wallace v. Remington Rand, Inc., La.App., 2 Cir., 1954, 76 So.2d 87, reversed on other grounds 1956, at 229 La. 651, 86 So.2d 522.
Therefore, the issue presented with regard to the plea of prescription is factual in nature. The question being whether the services performed by plaintiff herein were commensurate with the wages received by him during the two week period of light duty.
There is no conflict in the evidence. It cannot be denied that the employee was actually earning substantial wages during the two weeks in question. According to his employer, the maximum hourly rate of pay for the type work he was performing was usually $1.95. Therefore, he clearly earned $78 per week. However, because he was paid $93 for such a period, can it fairly be said that he was not paid wages commensurate with the work he did? Stated another way, was $15 per week paid to him as a gratuity so as to classify same as compensation payments?
We think the judgment of the lower court sustaining the plea of prescription was erroneous. An examination of the written opinion reveals that such judgment was predicated upon the case of Wallace v. Remington Rand, Inc., supra.
That case is clearly distinguishable on the facts from the one now under consideration. There, the employee returned to work for his former employer in the same capacity and doing the same work. The court held, even though an employee is not required under the workmen's compensation act to work in pain; that if such labor is actually performed, the employee is considered as having earned his wages. In other words, there was no question in the Wallace case but that the wages were fully earned.
We feel the case of Walters v. General Accident & Fire Assurance Corp., Ltd., supra, is the most appropriate citation to the problem now under consideration. In that case the injured employee was a fireman and returned to his former occupation and was assigned to the same duties at the same rate of pay. He was able to perform all of his former duties except actually fighting fires, which was estimated to be only about five per cent of his total duties. Judge Landry, as the organ of the Court, gave a very exhaustive and scholarly discussion of the jurisprudence and concluded the wages paid were not commensurate with the work performed and were, therefore, paid in lieu of compensation. It was the holding of the court that the performance of ninety-five per cent of the employee's former duties was not sufficient to classify the wages as having been fully earned.
The only difference in the cited case and the instant case is that here the employee did not return to his original job, but was assigned different duties. However, where the question is whether the employee is performing labor which is commensurate with his wages, we are unable to see that it makes any difference whether such labor is performed under his former classification or under an entirely different one. We think the proper test is whether he is fully earning his wages when he returns to work for *157 his employer. In this case, the employee could not have been earning more than $78 per week according to the rate usually paid for such work. Therefore, when he was paid his former base pay of $93 per week for such work, he was only performing approximately 84 per cent of the work for which he was being paid. Under these circumstances, it cannot be said that the wages paid were commensurate with the work performed and certainly, under the holding of the Walters case, such wages were not fully earned.
As pointed out by this court in the case of Wallace v. Remington Rand, Inc., supra, the basis for construing unearned wages as compensation payments for the purpose of interrupting prescription under LSA-R.S. 23:1209, is the finding of an implied understanding between the employer and employee that such payments are made in lieu of compensation. In order to find such an implied agreement, it is necessary that the employer do more than merely re-employ the injured worker with knowledge that he is suffering from a compensable injury. Most cases on this point involve a situation where the injured employee returns to work on a permanent basis in a different job category where he can clearly perform all the duties. This is not true in the instant case. This employee was being paid compensation and pursuant to the doctor's instruction would continue to receive such payment until June 18, 1959. The thing that both the employer and employee were endeavoring to do was to allow an admittedly totally disabled employee to return to work for a limited period of two weeks in order to become eligible for a paid vacation. Under these circumstances, when the employer assigned Griffin to a different type job in which he earned only 84 per cent of his wages, we feel this was the strongest type of an implied understanding on the part of the employer that such wages were in lieu of compensation.
Having decided the plaintiff's claims for compensation have not prescribed, we now pass to a consideration of the merits of such demands. LSA-R.S. 23:1221 provides in part as follows:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments: * * *
"(4) In the following cases the compensation shall be as follows: * * * (p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."
We take the liberty of quoting rather extensively from the recent case of Francois v. Circle Drilling Company, Inc., La.App. 1 Cir., 1959, 112 So.2d 771, 773, wherein the court had under consideration the proper application of the above portion of the compensation act:
"In Professor Wex Malone's book, `Louisiana Workmen's Compensation Law and Practice,' page 363, Section 284, under the hearing (sic) `Compensation for Impairment of Function' we find:
"`It will be noted that the provision of the Act quoted in the preceding section on Disfigurement likewise directs the payment of compensation for an impairment of the usefulness of a physical function. Here again, as in cases of disfigurement, this provision does not apply where there is an accompanying disability.
"`A question arises as to how serious an impairment must be before compensation can be allowed under this provision. If the impairment amounts to *158 one of the specific losses enumerated in the schedule, the provision under consideration does not apply. If the injury is less than this, or if it affects some organ or member not listed in the schedule, it is within the purview of this provision so long as it is more than a mere triviality and yet does not arise to the dignity of a disability.
"`Compensation has been allowed under this provision for injury to a rib, an impairment of the hearing, and, in one early case, for loss of one-half of a foot. * * * However, in a recent case the decision suggests that a liberal attitude should be expected and the court allowed compensation for the loss of the distal phalanx of each of several fingers on the left hand which did not result in disability.'
"Many decisions are cited to substantiate the statement of Professor Malone and in one, the Second Circuit Court of Appeals allowed compensation under the provisions for impairment of hearing. This case is Burrows v. Arizola Petroleum Company (Second Circuit Court of Appeal), 7 La.App. 704. In this case the court found that plaintiff's hearing was impaired and that the condition was produced by the accident, but according to the medical testimony the impairment was not sufficient to produce disability to do work of a reasonable character. The court also found that the plaintiff could hear and understand ordinary conversation across the room, and it was only where more than one person talked that he got confused. There was no indication in the testimony that plaintiff experienced any difficulty in hearing questions propounded to him in court. based upon these facts the court allowed compensation under the provision of the law where the usefulness of a member of any physical function is seriously, permanently impaired.
"In the case of Dronet v. American Mut. Liability Ins. Co., [La.App.], 69 So.2d 114, this court with Judge Cavanaugh as its organ awarded compensation under LSA-R.S. 23:1221(4)(p) where a permanent neck injury did not affect plaintiff's ability to work or his earning capacity. In this case plaintiff had received a compensable neck injury which had resulted in fusion of fractured cervical vertebrae so that forward movement or flexion was impaired ten degrees, lateral movement to right ten degrees, and lateral movement to left twenty degrees. Plaintiff was awarded by this court $15 per week for a period not exceeding 110 (sic) weeks, though plaintiff, after injury, was able to perform the same kind of work he was performing at the time of the accident and was not permanently disabled to perform work of a reasonable character.
"In the award of compensation for the serious impairment of a physical function under the statutory provision in question, the court is permitted to use its sound discretion in fixing the amount of the weekly compensation `in proportion to the compensation * * * provided in the cases of specific disability' (statutory language) but such award must be made payable for the fixed period of 100 weeks and the amount of the weekly compensation may not exceed 65% of the weekly wages at the time of the accident. Jarreau v. London Guarantee & Accident Co., La.App., 98 So.2d 727; Dronet v. American Mutual Liability Ins. Co., La.App., 69 So.2d 114; Goins v. Shreveport Yellow Cabs, Inc., La.App., 200 So. 481. (Further, as the two last-cited cases hold, the employer or his insurer is entitled to credit for compensation previously paid under disability sections of the statute.)"
With regard to the present case, Dr. Ray King, whose qualifications as an orthopedic *159 surgeon were not questioned, testified as follows with reference to the residual disability of the injured employee's back:
"Q. Dr., have you made any appraisal of the loss of use in either the back or in the body as a whole as the result of the surgery that was performed? A. Yes sir. Because of the restricted motion, of course, the back is not normal back, in that respect, and I feel that produces a certain amount of disability, which in his case I thought it would be approximately fifteen percent of the body as a whole."
Under the evidence before us, this substantial impairment of the employee's back will not disable him from the performance of his duties as a field operator for the oil well servicing company by whom he is employed. On the other hand, it is a substantial impairment of the function of his back entitling him to compensation under the provisions of the act in question.
Therefore, considering the plaintiff's weekly wages at the time of the accident were in excess of $100, we feel an award of compensation at the rate of $25 per week, less a credit for each week of compensation (or wages in lieu of compensation) previously paid, would be proper.
For the above and foregoing reasons, the judgment below sustaining the plea of prescription is reversed, annulled and set aside and,
It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Freddie Griffin, and against the defendant, Liberty Mutual Insurance Company, for weekly compensation at the rate of $25 per week for one hundred weeks, commencing December 12, 1958, less credit for twenty-two weeks compensation previously paid, and four weeks of wages paid in lieu of compensation, or a total credit of twenty-six weeks; that the defendant-appellee pay all costs.
Reversed and judgment rendered for plaintiff.