138 So.2d 158 (1962)
Roy COFFEY
v.
TRANSPORT INSURANCE COMPANY and Braswell Motor Freight Company.
No. 366.
Court of Appeal of Louisiana, Fourth Circuit.
January 2, 1962.
Rehearing Denied March 12, 1962.
Certiorari Denied April 19, 1962.
*159 Hattier, Schroeder & Kuntz, Herman M. Schroeder, New Orleans, for plaintiff and appellant.
Christovich & Kearney, W. K. Christovich, New Orleans, for defendants and appellees.
Before McBRIDE, REGAN and HALL, JJ.
McBRIDE, Judge.
This is a suit for workmen's compensation at the rate of $35 per week for 400 weeks, brought by an automotive truck mechanic who claims to have been permanently and totally disabled by reason of an occupational accident which occurred on January 7, 1960. It is not disputed that plaintiff sustained a ruptured intervertebral disc with nerve root compression. The suit is directed against the insurer of and the former employer who make the sole defense that all disability resulting from the accident has ceased. Plaintiff has appealed from a judgment awarding him compensation for 300 weeks at the rate of $14 per week for permanent partial disability, and he only contends before us that he should be decreed to be totally and permanently disabled and for an appropriate amendment of the judgment; defendants neither appealed nor answered plaintiff's appeal.
Plaintiff, an experienced mechanic 45 years of age, had worked on large automotive trucks for 19 years. He entered the employ of the predecessor of defendant Braswell Motor Freight Lines in 1954. Although the duties of the occupation require a skilled worker, they also entail a considerable amount of physical brawn and effort.
Plaintiff has had previous trouble with his back. In 1954 he visited Dr. Howard Karr, a neurological surgeon, for a catch and some stiffness of the back and numbness in a thigh. The record contains no further information as to the outcome of the treatment, if any, accorded plaintiff.
In May 1957 during the course and scope of his employment plaintiff met with an accident from which he sustained a ruptured intervertebral disc with accompanying nerve root compression, which condition was corrected by Dr. Karr, who performed what is referred to as a laminectomy on April 26, 1958, and after the period of convalescence, Dr. Karr discharged plaintiff as being fit to return to his job of mechanic. Dr. Karr, who treated plaintiff as a private patient, considered the operation entirely successful; however, Dr. Blaise Salatich, orthopedic surgeon who later examined plaintiff, disagreed with Dr. Karr and admonished plaintiff not to return to the heavy duties required by his job.
As a result of the aforesaid accident of May 1957, plaintiff, claiming to have been totally and permanently disabled thereby, filed a suit against the liability insurer of his employer for workmen's compensation, in which suit a compromise was effected in June 1958, out of which plaintiff received $5,000 in cash; whereupon, he returned to *160 his mechanic's job and worked regularly to January 7, 1960. He made no complaints of pain or disability and he seems to have been able to carry out his duties to the same degree he had performed them prior to sustaining the ruptured disc. Undoubtedly he proved competent, and his work met with the satisfaction of the employer.
On January 7, 1960, while in the employ of Braswell Motor Freight Lines (which in the meanwhile had become the successor of the previous employer), as a result of the strenuous duties of the occupation, plaintiff sustained another ruptured intervertebral disc at the same spinal interspace as before, which caused the usual nerve root compression and much pain. A week later Dr. Karr, this time as physician for the employer, performed a laminectomy to relieve pressure on the nerve root so as to eliminate plaintiff's painful condition. Dr. Karr discharged plaintiff on April 27, 1960. Dr. Richard Faust, general surgeon, who also had been in attendance and had seen plaintiff about 27 times in all, both before and after the operation, discharged him on June 1, 1960. Plaintiff was paid compensation during disability, but the record shows neither the rate thereof nor the number of weeks paid.
Plaintiff has never made any attempt to return to his job with Braswell Motor Freight Lines, and states he did not make such attempt because his back is weak and there is numbness in the left leg.
Some seven months after Dr. Karr's discharge and about five months after Dr. Faust had discharged him, plaintiff, without having seen any other physician or having sought further medical advice or attention, filed the instant suit alleging he is permanently and totally disabled to do work of any reasonable character.
Plaintiff did not see a physician until the time of trial approached when he visited Dr. Salatich on January 24, 1961, and he attempts to convince the court such visit was prompted by his having been "shook up" in endeavoring to jump over mud puddles. Dr. Salatich on the other hand asserts plaintiff visited his office for "orthopedic evaluation" which indicates the visit was for examination for the purpose of preparing Dr. Salatich to testify as plaintiff's witness at the trial. However, Dr. Salatich states he prescribed a back brace for plaintiff. Dr. Jose L. Garcia Oller, neurological surgeon who examined plaintiff just a few days before the trial date, also appeared on plaintiff's behalf.
Dr. Irving Redler, orthopedic surgeon, examined plaintiff after Dr. Garcia Oller had seen him and appeared as a witness for the defense.
Plaintiff for success in the instant suit relies on the testimony of his two medical experts, each of whom had examined him but once and then months after he had been discharged by Drs. Karr and Faust, the treating physicians. Neither of plaintiff's experts said he was totally and permanently disabled or incapacitated from working. Dr. Salatich thought "that this individual must be considered a very poor candidate for ever resuming the unquestionably imposing, demanding and exerting occupational duties of a heavy duty truck mechanic, especially if such work was to be performed continuously, efficiently, comfortably and safely." We gather that such observation is based on the doctor's conclusion that "since one laminectomy is considered disabling, a second laminectomy unquestionably and unarguably can (be) consider(ed) disabling to a much greater degree, and I, based upon two laminectomies that this man had had, strongly advise that he work only within the limits of his restrictions."
Dr. Garcia Oller's testimony is along the same lines. When asked if he had advised plaintiff to return to his former duties as truck mechanic he replied:
"I would say, no, I would not, because the patient has had two ruptured discs and the last one has been followed by persistent neurological defects, and I would say it would be considered *161 poor advice for a man to return to duty. By that, I mean, heavy work because if he has another injury, if another injury would occur, the man would then perhaps be severely injured."
As against the testimony given by plaintiff's medical experts stands the testimony of the three physicians who appeared as witnesses on behalf of the defense. Dr. Karr was of the opinion there is no disability and thought plaintiff was physically able to pursue all of his former duties. Dr. Faust was of the same opinion as was Dr. Redler, who had examined plaintiff subsequent to Dr. Garcia Oller's examination. From the defense experts' testimony it appears clear to us that a ruptured intervertebral disc is not in itself disabling or painful or produces symptoms. As Dr. Karr explained:
"* * * The thing that is disabling from the disc is the pressure that is produced by the migration of a fragment of that disc which is forced out and does go on into the spinal canal and compresses a nerve root, * * *."
The laminectomy had the effect of removing the cause of plaintiff's pain, and we think the testimony of these three defendant experts establishes that plaintiff's spine has good fusion and he is not disabled to any extent.
The jurisprudence of this state is to the effect that in proceedings by a workman for compensation, the testimony of the attending physician is accorded greater weight than the testimony of physicians such as Dr. Salatich and Dr. Garcia Oller who examined the plaintiff but once on the eve of the trial and then not for the purpose of treatment but simply in connection with the litigation. See Istre v. Molbert Brothers Poultry & Egg Co., Inc., La.App., 125 So.2d 436. We must also look into the course of conduct of plaintiff. Some time prior to his medical discharge he proceeded to the office of Braswell Motor Freight Lines and removed his personal belongings and tools from the warehouse. Moreover, he applied for a job in the sales department of another concern, and coincidentally with the stopping of compensation payments by the defendants, he entered the employment of this other concern at wages comparable to those he earned as a mechanic, and he has been steadily employed there ever since. When the new job materialized, plaintiff lost no time in resigning his job with Braswell Motor Freight Lines. The terminal manager states that plaintiff came into the office and tendered his resignation because he had found a "better job." He made no mention or complaint whatever of any disability or inability to return to his mechanic's job.
However, there remains a nondisabling restriction and impairment of the motion of plaintiff's back which the evidence shows is a residual of the two spinal operations. Dr. Faust estimated such impairment at from 10 percent to 15 percent, while Dr. Redler's estimate of the impairment was 10 percent.
The trial judge somehow concluded plaintiff had sustained a 25 percent disability and dealt with him as though he was partially and permanently disabled from returning to his mechanic's employment, computing the award in accordance with LSA-R.S. 23:1221(3) which provides for compensation for injury producing partial disability to do work of any reasonable character at 65 percent of the difference between wages earned at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not beyond 300 weeks.
However, the instant workman though possessing the impairment of 15 percent to the back is not, according to the defense experts, disabled from following his usual trade or performing such duties as were his before the injury, and under these circumstances it was error to award compensation on the theory of partial disability under LSA-R.S. 23:1221(3) or under any of the *162 other disability provisions of the compensation statute.
This case is unlike Stogner v. American Motorists Insurance Co., La.App., 123 So.2d 655, wherein we had before us a carpenter who had sustained a 15 percent disability of movement in his right shoulder, but who could perform the duties of his trade and returned to his usual employment. The record was not too clear about his wages at the time of injury, but he was receiving $49 per week at the time of trial. There seems to have been some diminution in earnings, so we applied the provisions of LSA-R.S. 23:1221(3) and concluded that 65 percent of the difference in the wages earned before and those earned after the accident would be less than $10 per week, and held that the workman was partially disabled and as such entitled to the statutory minimum of $10 per week under LSA-R.S. 23:1202, as amended, for a period not to exceed 300 weeks.
The plaintiff now before us certainly would be entitled to some form of compensation in view of the circumstance that his accident, though not permanently disabling, left the residue of 15 percent loss of the use of his back which constitutes a serious and permanent impairment of a physical function. Our opinion is that the provisions of the compensation statute controlling the situation and which should have been applied under the circumstances are to be found in LSA-R.S. 23:1221(4) (p) and read:
"(4) In the following cases the compensation shall be as follows:

* * * * * *
"(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."
Our brothers of the Second Circuit, facing just such a situation as is before us, applied LSA-R.S. 23:1221(4) (p) in the case of a field operator of an oil well servicing business who had sustained an injury to his back which was diagnosed as a ruptured intervertebral disc. He underwent surgery which was successful, but was left with a permanent restriction in the motion of the back. The workman did not pretend to be disabled, but the basis of his suit was the alleged permanent impairment of the back as a result of the spine fusion. The court concluded the usefulness of a physical function was seriously and permanently impaired and in its discretion awarded plaintiff $25 per week during 100 weeks as being reasonable and in proportion to the compensation provided in cases of specific disability. See Griffin v. Liberty Mutual Insurance Company, La.App., 131 So.2d 153.
The instant plaintiff earned before his injury about $100 per week, and because of the permanent restriction in the use of his back, he should have been entitled, under LSA-R.S. 23:1221(4) (p) of the statute, to compensation which should have been fixed at the rate of $25 per week for a period of 100 weeks (less the number of weeks for which compensation had been paid). Twenty-five dollars per week in our opinion would have been reasonable compensation for the nature of such bodily impairment. This would have entitled plaintiff to an aggregate of $2,500 (less the proper credits), but whereas defendants saw fit not to appeal or file answer to plaintiff's appeal, the judgment before us which provides for more liberal compensation is final insofar as they are concerned, and it must stand.
Therefore, the judgment appealed from is affirmed.
Affirmed.