225 So.2d 765 (1969)
Dennis VENTRESS, Plaintiff-Appellant,
v.
DANEL-RYDER, INC., et al., Defendants-Appellees.
No. 2693.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1969.
On Rehearing August 7, 1969.
On Rehearing August 14, 1969.
On Rehearing August 18, 1969.
*766 Taylor & Trosclair, by Frank P. Trosclair, Jr., Opelousas, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by James E. Diaz, LaFayette, for defendants-appellees.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
The plaintiff Ventress appeals from the dismissal of his suit to recover additional workmen's compensation benefits from his employer and its insurer. In October, 1966, Ventress was injured at work as a common laborer. He was paid compensation during disability for five months, until discharged by his attending physician as able to return to work.
The chief issues of this appeal concern whether there is any compensable residual disability.

1.
The facts are as follows: Ventress sustained a severe lumbosacral strain at work. Such an injury consists of a tearing of the ligaments supporting the lumbosacral joint.
Ventress underwent treatment for five months, was discharged, and immediately returned to work. His attending physician noted that he was still complaining of back pain at the time, but Ventress wanted to return to work in view of the absence of objective symptoms. He has been working as a bricklayer ten hours per day at $3.00 per hour consistently since his discharge.
On the other hand, Ventress suffers recurrent episodes of back pain, which do not, however, prevent him from performing the duties of his employment. He likewise feels unable to perform heavy lifting, although he does feel able to perform the continuous stooping and other duties of bricklaying.
Following his discharge by his attending general practitioner, Ventress was examined by two different orthopedists, twice each. Their uncontradicted testimony shows that he does have a permanent residual from his severe lumbosacral sprain which produces the recurrent episodes of pain. The orthopedists concluded this on the basis of the consistency of his localized complaints and of his responses to leg-raising tests, in the light of his history and complaints. Both of these specialists rated Ventress as having a 10% permanent impairment or loss of function of the back, based upon these recurrent episodes of pain and a continuing susceptibility to reinjury.
*767 Neither of these specialists felt that he was unable to perform the duties of manual labor, either physically or because of substantial pain or substantial possibility of re-injury. However, each was of the opinion that as a residual of the work-accident (partially aggravated by a pre-existing back-instability) the claimant has sustained a definite loss of function, producing temporary soreness of the back after days of work involving with much bending and also producing recurrent episodes of nondisabling pain.

2.
The claimant's attorney ably argues that he is entitled to compensation for either total or partial disability. The trial court correctly rejected these contentions.
a. Total Disability
A common laborer may be entitled, as suggested, to compensation for total disability if unable to perform the ordinary duties of his occupation without substantial pain, Schram v. Lake Charles Ready-Mix, La.App. 3d Cir., 125 So.2d 213, or without substantial susceptibility to re-injury, Mitchell v. Travelers Insurance Co., La.App. 3d Cir., 136 So.2d 143, or if his ability to compete for employment in the general labor market has been substantially decreased by the accident-residual, Olivier v. Liberty Mutual Ins. Co., 241 La. 745, 131 So.2d 50. See also, Malone, Louisiana Workmen's Compensation Law, Sections 272, 274, 275 (1951).
Nevertheless, in the present case, the medical experts do not advise against performing heavy labor because of any substantial susceptibility to reinjury. The medical and lay evidence does indicate recurrent discomfort, but not of a substantial enough nature to be considered disabling nor to put the claimant at a competitive disadvantage in the common labor market. Therefore, the claimant is not entitled to recover benefits for total disability. Ball v. American Marine Corp., 245 La. 515, 159 So.2d 138.
b. Partial Disability
Alternatively, counsel argues that the claimant is entitled at least to an award for partial disability. LSA-R.S. 23:1221 (3) provides that, for partial disability, an injured employee is entitled to receive compensation based upon the difference between wages paid at the time of injury and wages which the injured employee is able to earn thereafter.[1]
Scattered awards for partial disability are found where a residual is not substantial enough to be totally disabling, but where nevertheless a residual functional disability results in some slight impairment or reduction of earning capacity, although it does not constitute a competitive disadvantage to employment in the general market. Blanchard v. Pittsburg-Des Moines Steel Co., 223 La. 577, 66 So.2d 342; Stogner v. American Motorists Ins. Co., La.App. 4th Cir., 123 So.2d 655.
We must reject the present claim for partial disability, because no impairment or reduction of earning capacity is shown. The later decisions consider this to be a prerequisite, under the statutory text, for an award for partial disability. White v. United States F. & G. Co., La. App. 3d Cir., 158 So.2d 210; Lee v. Royal Indemnity Co., La.App. 1st Cir., 149 So.2d 606, certiorari denied.
Decree
Accordingly, finding no disability, we affirm the judgment of the trial court dismissing the plaintiff's claim.
Affirmed.

*768 On Rehearing.

En Banc.
TATE, Judge.
In his application for rehearing, the plaintiff Ventress for the first time raised the issue that, alternatively to his claim for disability, he is at any rate entitled to an award for the permanent loss of function in his back. See LSA-R.S. 23:1221(4) (p). We granted rehearing to consider this issue.
Although belatedly urged, the record shows that the plaintiff is entitled to such an award.
We reject the argument that this court cannot consider the plaintiff's right to receive compensation for permanent impairment of function because, until the present application for rehearing, the plaintiff had sought an award for disability only. In view of the remedial purposes of the workmen's compensation act, an injured workman's claim will not be dismissed simply because meritorious contentions are raised belatedly. Burk v. Security Insurance Co., 248 La. 177, 177 So.2d 278, 279; Wade v. Calcasieu Paper Co., 229 La. 702, 86 So.2d 540. See also: Crimen v. Fidelity and Casualty Co., 249 La. 1071, 193 So.2d 249. Thus, where compensation for nondisabling residual by way of a permanent loss of function is not sought before the trial court (where only an award for disability is claimed), nevertheless the appellate court should allow compensation for proven nondisabling permanent impairment, if disability is not proved. Eaves v. Louisiana Cypress Lumber Co., 253 La. 741, 219 So.2d 771; Dronet v. American Mutual Liability Ins. Co., La.App. 1st Cir., 69 So.2d 114.
In the present case, we find that the uncontradicted medical[1] and lay testimony indicates a permanent residual impairment of back function, which recurrently produces significant pain and soreness upon exertion, and which will do so for the remainder of the plaintiff's life. The uncontradicted medical opinion of 10% permanent impairment or loss of function of the back is based upon these recurring episodes of pain, not substantial enough to be disabling (but significant enough to produce real ache and soreness), as well as upon the increased susceptibility to re-injury caused by the work-accident.
The residual is not severe enough to handicap the plaintiff in gaining employment nor to prevent him from performing his duties (except on occasional days of unusual severity). It is, however, a nondisabling residual with which the plaintiff will suffer for the rest of his days, a permanent result of the accident at work. This type of residual arising from permanent impairment of function entitles a claimant to compensation under LSA-R.S. 23:1221(4) (p), in the schedule providing for compensation for specific losses which do not produce total or partial disability.[2] The cited statutory provision authorizes the court to allow reasonable compensation for a residual "where the usefulness of a physical function is seriously permanently impaired."
Under this statutory provision, in circumstances similar to the present, compensation has been allowed for nondisabling residual limitations upon use of a back and nondisabling residual back-pain which result in a permanently weakened back. Ball v. American Marine Corp., 245 La. 515, 159 So.2d 138; Hammond v. Sewerage and *769 Water Board, La.App. 4th Cir., 204 So.2d 699; Coffey v. Transport Insurance Co., La.App. 4th Cir., 138 So.2d 158; Griffin v. Liberty Mutual Ins. Co., La.App. 2d Cir., 131 So.2d 153.
The basis of the award under this statutory section is not disability. It is to allow a limited award for a permanent residual of a work-injury which does not produce disability but which will seriously hinder the employee for the rest of his life. The permanent back soreness of the present case is no less compensable than a nondisabling scar or loss of teeth, other types of nondisabling physical impairments often compensated under this provision. See Courville v. Ashy Construction Co., La. App. 3d Cir., 207 So.2d 910 (residual knee pain).
It is a limited award, however. Under this provision, the court may award only one hundred weeks compensation, in either a percentage of up to 65% of the claimant's wages (not to exceed the statutory maximum weekly compensation, LSA-R.S. 23:1202), or else a fixed amount of between the statutory minimum and the statutory maximum compensation awardable under LSA-R.S. 23:1202, these respective limits being $10 and $35 at the time of the accident.[3]
However, any award for loss of function or for specific loss under Subsection (4) of LSA-R.S. 23:1221 is subject to a credit for any compensation allowed for total or partial disability. LSA-R.S. 23:1223. Furthermore, this latter section provides that the "amount" of weekly compensation benefits for disability is deducted from the award for impairment of function. That is, the award for loss of function or for specific loss is reduced dollar-by-dollar, not week-by-week, by the total of weekly disability benefits paid or allowable. Hall v. Pipe Line Service Corporation, 233 La. 821, 98 So.2d 202; Miller v. General Chemical Division, La.App. 1st Cir., 128 So.2d 39.
In fixing compensation for impairment of function under the cited section, the award is not restricted to medical percentage, but may instead be based upon the court's sound discretion to award reasonable compensation in proportion to awards of compensation for specific losses. LSA-R.S. 23:1221(4) (p); Fruge v. Hub City Iron Works, La.App. 3d Cir., 131 So.2d 593, certiorari denied; Griffin v. Liberty Mutual Ins. Co., La.App. 2d Cir., 131 So.2d 153; Francois v. Circle Drilling Co., La. App. 1st Cir., 112 So.2d 771.
Applying these principles, we find that the claimant is entitled to an award of at least $10 per week, the statutory minimum applicable, for one hundred weeks in order to compensate him for the permanent impairment of his back function shown by the uncontradicted medical testimony to be the residual of the work-accident. However, this award of compensation must be reduced by the approximately $700 weekly disability compensation paid him between October, 1966 and March, 1967.

Decree
Accordingly, for the reasons assigned, we affirm the District Court's determination that the claimant is not entitled to weekly compensation for disability under LSA-R.S. 23:1221(1), (2), or (3); but we reverse its denial of any compensation, and we enter judgment in favor of the claimant, Dennis Ventress, and against the defendants, Danel-Ryder, Inc., and the Liberty Mutual Insurance Company, holding them solidarily liable under LSA-R.S. 23:1221 (4) for weekly compensation for one hundred weeks at the rate of Ten and No/100 ($10.00) Dollars, less credit for compensation of $35 weekly paid from October 18, *770 1966 to March 9, 1967; together with legal interest upon each delinquent instalment from the date of its delinquency until paid. All costs of the trial and appellate courts are to be paid by the defendants-appellees, including the fees of the medical experts, which may be taxed by rule, LSA-CCP Art. 1920.
Affirmed in part; reversed in part.
MILLER, Judge (dissenting).
The writer is of the opinion that the trial judge's decision and our original affirmance of that decision correctly disposed of all issues. I respectfully dissent from the majority's conclusion on rehearing that plaintiff proved a permanent loss of function in his back. Even though this issue was raised for the first time on application for rehearing to this court, I believe that the trial court considered and ruled on plaintiff's credibility and that we are bound by this ruling unless we find manifest error.[1]
It appears to the writer that this reversal is based primarily on the issue of plaintiff's credibility. This is true because plaintiff's orthopedic surgeons base their respective opinions on plaintiff's complaints of pain. It must be noted that when plaintiff was examined (evidently for the purpose of this litigation) by the orthopedic surgeons selected by plaintiff's attorney (by Dr. Robert Luke Bordelon, orthopedic surgeon of Opelousas, on June 20, 1967 and January 9, 1968; and by Dr. George P. Schneider, orthopedic surgeon of Lake Charles, on February 5, 1968 and October 11, 1968), plaintiff was not suffering any pain except minimal complaints caused by the examination. And those were admittedly mild. The fact that plaintiff's history of pain (reported to these two physicians) had not caused plaintiff to seek medical attention, must have impressed the trial judge (as it does the writer) that these complaints were questionable. There is other evidence to cast doubt on plaintiff's credibility. Plaintiff answered interrogatories (Tr. 21) and testified (Tr. 47) that he had drawn three weeks of unemployment compensation following his release to return to work in March of 1967. On the other hand, Mr. C. A. Gardiner, manager of the Opelousas office of the Louisiana State Employment Service, testified that plaintiff drew seventeen weeks of unemployment insurance starting on March 5, 1967. (Tr. 91). Plaintiff has worked 10-hour days almost continuously since his March, 1967 discharge to return to work.
On other occasions this court has been reluctant to reverse the trial court on questions of credibility and the writer would apply this accepted rule. The writer would also apply the rule summarized in Malone's Louisiana Workmen's Compensation Law and Practice at page 372:
"In view of the fact that disability may be found merely from the fact that the worker experiences pain in discharging his duties, it often becomes necessary to establish the fact of pain. This will usually be done through the testimony of the complainant or his relatives and friends, supported by the evidence of the experts that the objective conditions are of a character calculated to produce pain." (Citations omitted and emphasis added.)
While we are not here concerned with disability resulting from pain, should it take any less evidence to support a finding of loss of a physical function (which loss was based on plaintiff's history of pain given to physicians seen solely for litigation purposes)?
The majority opinion emphasizes that the "uncontradicted medical testimony"[2] and "the lay testimony" indicates a permanent residual impairment of back function, *771 which recurrently produces significant pain and soreness upon exertion, and which will do so for the remainder of plaintiff's life. The writer would emphasize that the only lay testimony in the record on the subject of plaintiff's pain and/or disability is that of plaintiff himself. He testified that he injured his back on October 18, 1966 causing pain which he described as "a sticking in my back, and in my left leg." He was not hospitalized. He was discharged (after 8 visits) by the treating physician (who had been selected by plaintiff) in March of 1967 and went to work shortly thereafter as an apprentice bricklayer. In connection with that work he "would pass bricks and sometimes lay bricks * * *." Later he became a bricklayer. His earnings were $3.00 per hour whereas before, plaintiff earned $1.75 per hour. In answer to the question as to how the injury affected his back insofar as his job is concerned, plaintiff answered (at the October 29, 1968 trial):
"A. Well, if I have to work anywhere, bend over it affects me then, or if I have to do some straining or something it hurts me at the time, but as long asI mean something light well, I have no trouble." (Tr. 47).
In plaintiff's entire testimony, this is his only complaint of pain subsequent to his March, 1967 discharge to return to work.
The majority opinion suggests[3] that plaintiff's pain occasionally prevents him from performing his duties. This is taken from history recited by plaintiff's orthopedic surgeons, for there is no testimony by plaintiff to this effect. The writer cannot equate information or history given by plaintiff to physicians with testimony taken at trial or by deposition.
The writer agrees that the only medical testimony concerning plaintiff's present condition was that presented by plaintiff, for neither the treating physician selected by plaintiff nor the general surgeon selected by defendant have seen plaintiff since he was discharged to return to work in March, 1967. It seems remarkable to the writer that the majority is unimpressed by the fact that plaintiff has not sought treatment since his March, 1967 discharge to return to work.
Let us examine the uncontradicted testimony of the two orthopedic surgeons selected by plaintiff. In reciting plaintiff's history, as of the June 29, 1967 examination, Dr. Bordelon stated that plaintiff "was not hurting at the time that I saw him for examination." (Tr. 53). "* * * At the time that I saw him I was of the opinion that there was no evidence of physical impairment but I believe that the patient was having some difficulty. * * * I suggested that the patient continue to perform activity within his limits as he had been doing and that any definite or permanent diagnosis be deferred for several months until the clinical course could be established, and I was of the opinion that this should be established within six months." (Tr. 55).
As of January 9, 1968, Dr. Bordelon's recital of history from the plaintiff included the following statements: "* * * He had had no severe episode of pain and had not seen any doctor since he was released by Dr. deBlanc in March. He had not missed any work because of pain. When asked how he felt regarding heavy labor he stated that he could do it but did not know how long he would last while performing it. He was not having any pain at the time that I saw him. I examined him again and the examination again revealed a very cooperative colored male who walked well without difficulty. Motion of the back was performed to a normal degree and with good reversal of the lumbar lordosis. There was no paravertebral *772 muscle spasm present. There was some very slight tenderness to palpation in the lumbar area. * * * Lumbosacral flexion produced slight complaint of pain in the lumbar area. * * * At the conclusion of this examination I was of the opinion that the patient had a history which was compatible with that of a strain of the back with residual symptoms but without any objective finding of physical impairment and I was of the opinion that the patient was still slightly symptomatic as a result of the injury and I rated the patient as having a 10% permanent physical impairment of the back on the basis of symptoms. At the time that I saw the patient I believed that the patient did have some residual symptoms but that he was probably able to perform full activity. However, I was of the opinion that he did have some impairment of the back and would probably have some increased susceptibility to a reinjury of the back, and this is the reason I gave the patient a 10% physical impairment on a permanent basis. * * *" (Tr. 56, 57, 58).
At Tr. 59, Dr. Bordelon testified: "My best opinion would be that he would probably be able to perform heavy labor." At Tr. 61, Dr. Bordelon testified: "I can't find evidence of disability on an objective examination. I can find evidence of physical impairment, and I found no evidence of physical impairment from an objective standpoint at the time of the examination." There was similar testimony at Tr. 60.
On cross-examination, Dr. Bordelon testified (Tr. 65):
"Q. Let me ask you this. In your examination were you able to determine objectively and/or subjectively any impairment of the function of the back?
"A. No.
"Q. On what do you base your opinion of the possibility or susceptibility of reinjury in this man's back?
"A. Well, this again is based strictly on the history. The history as given to me by the man was consistent with the history of a person who has sustained an injury and who still has residual symptoms. Now I believe that a person with this situation is more susceptible to reinjury. I can't say exactly what he will do or what is going to happen, but he would be more susceptible.
"Q. You're not of the opinion that every man who strains his back is more susceptible to reinjury?
"A. No. For me to say this and base it solely on the history I have to have a very consistent history * * *" (Emphasis mine.)
Again at Tr. 68, Dr. Bordelon testified on cross-examination:
"Q. And your examination on the first time (June 20, 1967) you saw him was again from an objective point of view completely negative?
"A. Correct.
"Q. And there was no evidence of impairment of his back at that time?
"A. That is correct."
Dr. George Schneider found that plaintiff had a pre-existing posterior displacement of the 5th lumbar segment and that the strain or sprain of October, 1966 aggravated this condition. In both examinations, Dr. Schneider found no restriction of motion in plaintiff's back. (Tr. 84). The doctor was "not able to find any objective evidence of any residual disability from the sprain that he initially sustained on clinical examination." (Tr. 84).
On cross-examination, Dr. Schneider testified at Tr. 84:
"Q. In all probability this posterior displacement was present in this man's back before this man's accident?
"A. On the basis of reviewing the early films, I would tend to feel that it was present before the accident.

*773 "Q. Would this posterior displacement in and of itself independently of trauma cause an unstable back?
"A. It's possible that it could.
"Q. And would this posterior displacement irrespective of trauma cause you to give a percentage of disability with reference to the back?
"A. No. If there were no symptoms referable to the back and there were localized manifestations referable to the back, I wouldn't ascribe any disability to it. However, because of its existence, as I previously testified, if I were to screen this man, including x-ray examination, on a pre-employment physical, even if he denied having any difficulty on clinical examination, if I found this existing on x-ray examination, I would exclude him from any type of strenuous manual labor.
"Q. Because this renders him susceptible to injury?
"A. In my opinion, it does.
"Q. And this would be true independently of trauma? Independently of any previous trauma to your examination?
"A. Yes, sir. That's correct.
"Q. Insofar as your two examinations are concerned, then you did not objectively find loss of function of the back insofar as mobility and you were not able to objectively find loss of function of the back?
"A. No, sir. As I have previously testified, the only findings which I was able to note clinically was the fact that there was consistent localized discomfort over the lumbosacral level, and on the extremes of straight leg raising, the patient did complain of pain referred to the same level. Pain of a moderate degree. There was no indication of any exaggeration or any abnormal response on his part.
"Q. At the expense of repetition, you did not find from your examinations any loss of function of the back?
"A. No, sir. I did not."
As I understand this testimony, Dr. Schneider would not pass plaintiff on a pre-employment physical because of his pre-existing back condition which appeared on x-ray examination. This would be true even if on clinical examination plaintiff denied having any pain instead of complaining as plaintiff did of pain "of a moderate degree." With this testimony it is difficult to conclude that plaintiff's accident contributed to a loss of function of plaintiff's back. Applicable here is the line of cases which hold that the employer is only responsible for returning plaintiff to his prior condition.
On redirect examination, Dr. Schneider testified at Tr. 86:
"Q. The condition of the plaintiff's back at the present time, do you feel that the complaints of pain, the clinical findings, the x-ray findings, is this in your opinion as a result of the accident?
"A. In order to clarify this, I would like to indicate, and this is assuming the historical information to be correct, and that there had been no intercurrent injury, that this man had a spraining injury to the lumbosacral level at the time of this episode of trauma initially, that the residuals of this spraining injury have continued to render him symptomatic at this level, that he had an underlying instability as evidenced by the posterior displacement of the 5th lumbar segment pre-existent to this injury, and that the previous instability or the previous displacement being present *774 is one of the factors that has tended to promote the constantly recurrent symptomatology which the patient has noted, and is responsible for the fact that he's still having difficulty with his back." (Emphasis mine.)
The conclusion is inescapable to the writer at least that the only basis for the majority's conclusion that plaintiff has a 10% permanent impairment or loss of function of the back is the history related by plaintiff to the orthopedic surgeons. None of the history related by these physicians was presented by plaintiff while plaintiff was under oath.
The majority has cited four cases allowing compensation under LSA-R.S. 23:1221 (4) (p) in circumstances supposedly similar to the present, for nondisabling residual limitations upon use of a back and nondisabling residual back-pain which result in a permanently weakened back. The writer distinguishes these cases.
In the first cited case, Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1964), the opinion noted at the outset that:
"It is his (plaintiff's) contention that under the facts of this case he is entitled to be adjudged totally and permanently disabled and to be paid workmen's compensation accordingly,2 and this is the sole question which this case presents."
The footnote expressly stated that defendant did not apply for a writ of review of the correctness of the judgments of the lower court and the Court of Appeal. The language in the Ball case which lends support to the majority opinion must therefore have been dicta. But the case is also factually distinguished in that there plaintiff had a ruptured disc surgically removed. According to one of the physicians a 10 per cent permanent residual disability of the body as a whole "is expected in any laminectomy because when ligaments are removed, the anatomical structure of the back is not exactly as it was before." 159 So.2d 138 at 140.
The second cited case, Hammond v. Sewerage & Water Board of New Orleans, 204 So.2d 699 (La.App. 4th Cir. 1967), was described by the Court as on "all fours" with the Ball case, supra. Plaintiff underwent a laminectomy and was later classified by the physicians as fully capable of returning to his work as a common laborer though he had lost 10 per cent of the function of his body as a whole.
Coffey v. Transport Insurance Company, 138 So.2d 158 (La.App. 4th Cir. 1962) is similar to the Ball case in that plaintiff appealed seeking total and permanent compensation benefits, and "defendants neither appealed nor answered plaintiff's appeal." Therefore the discussion of the issue presently before this court was obiter dicta. Factually, the court had before it a case where plaintiff had undergone two laminectomy operations and the medical testimony indicated that plaintiff was "though not permanently disabl(ed), (was) left the residue of 15 percent loss of the use of his back which constitutes a serious and permanent impairment of a physical function." 138 So.2d 158, 162.
In the fourth cited case, Griffin v. Liberty Mutual Ins. Co., 131 So.2d 153 (La. App. 2d Cir. 1961) plaintiff's ruptured intervertebral disc was surgically corrected by a spinal fusion which resulted in a permanent restriction in the motion of the back. One physician testified that plaintiff's disability was approximately fifteen percent of the body as a whole. Plaintiff received an award of 100 weeks of compensation for this substantial impairment of the function of his back.
In each of the cited cases, the plaintiff had undergone surgery. Not one of these cases depended on the veracity of the oral history[4] which history appears in this record *775 only as a part of the testimony of the orthopedic surgeons.
The writer finds that plaintiff has not borne the burden of presenting evidence of a permanent residual impairment of his back related to his accident of October, 1966. I am of the opinion that the trial judge's decision should be affirmed.
HOOD, Judge (dissenting).
I am unable to agree with the factual and legal conclusions which were reached by the majority on rehearing.
In his original petition plaintiff alleges as one of several alternate grounds for his demands that he "sustained the permanent impairment of the use of those important physical functions." In the arguments made to this court on appeal he asserted three alternate claims, under different provisions of the Workmen's Compensation Act, but he did not argue that he was entitled to compensation benefits for the loss of the "usefulness of a physical function" under LSA-R.S. 23:1221(4) (p). His failure to argue that particular alternate claim is significant, I think, because it must have been as obvious to him as it was to the trial judge, and as it is to me, that there is no merit to such a claim. I feel that the majority has seriously erred in finding that plaintiff is entitled to recover under that section of the Revised Statutes.
My colleague Judge Miller, in a separate dissenting opinion, points out that the evidence fails to establish that plaintiff has sustained the "aches or pains" of which he complains. I concur in the views expressed in that dissenting opinion, and for the reasons assigned therein I feel that the majority has erred in reversing the factual findings of the trial court on that issue.
My principal objection to the majority opinion, however, relates to the interpretation which my colleagues have placed on the provisions of LSA-R.S. 23:1221(4) (p.). That section provides that in cases not falling within other provisions of the act, compensation benefits shall be paid "where the usefulness of a physical function is seriously permanently impaired." The language used indicates to me that there must be an actual impairment in the usefulness of a physical function, and that the impairment must be serious.
In the instant suit, the majority significantly has not found that the usefulness of plaintiff's back has been impaired or affected in any way. They acknowledge, in effect, that he has the same full use of and motion in his back, without any limitation, restriction or impairment of any kind. They find that he suffers "significant pain and soreness upon exertion," but they concede that the "ache and soreness" which he says he experiences occasionally is "not substantial enough to be disabling," or to prevent him from enjoying the full use of his back and all other parts of his body. In spite of these findings, they conclude that he is entitled to recover compensation benefits on the ground that he has suffered a serious and permanent impairment of the usefulness of his back. I do not think the facts or the law justify such a holding.
The majority cites four cases as the basis for such a holding, these cases being: Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1964); Hammond v. Sewerage and Water Board of New Orleans, 204 So.2d 699 (La.App. 4th Cir. 1967); Coffey v. Transport Insurance Company, 138 So.2d 158 (La.App. 4th Cir. 1962); Griffin v. Liberty Mutual Insurance Company, 131 So.2d 153 (La.App. 2d Cir. 1961).
In my opinion none of the cited cases are authority for the legal conclusions which have been reached. In each case the injured plaintiff sustained a ruptured intervertebral disc and the treatment administered consisted of a surgical procedure for the removal of the disc. In each instance the plaintiff was left with a limitation or restriction of motion of the back, so that there actually was a serious and permanent impairment of the function of the back. *776 Pain was not a factor in any of these cases. In the instant case nothing of that kind occurred. Plaintiff did not suffer a disc injury, he was not hospitalized and no surgery was performed. He now has the same range of motion, with no limitations or restrictions, and he has the same ability to use his back as he had before the accident. The facts in the instant case, therefore, are different from the facts in any of the cited cases on which the majority relies.
As pointed out in Judge Miller's dissenting opinion, the issue presented here was not before the court in the cases of Ball v. American Marine Corporation, supra, and Coffey v. Transport Insurance Company, supra. In the other two cited cases the evidence was clear that the accident left plaintiff with a substantial, serious and permanent limitation of motion in his back, and it was for that reason that he was awarded compensation benefits for the loss of the usefulness of a physical function.
Compensation benefits have been allowed under LSA-R.S. 23:1221(4) (p) for such things as loss of hearing, loss of the sense of smell and loss of teeth. Ryan v. Aetna Casualty and Surety Company, 161 So.2d 286 (La.App. 2d Cir. 1964); Holmes v. Traders and General Insurance Company, 94 So.2d 537 (La.App. 2d Cir. 1959); and Daigle v. Blasingame, 162 So.2d 351 (La. App. 3d Cir. 1964). In each such case, however, unlike the instant suit, the loss was serious and permanent, and it actually impaired the usefulness of a physical function.
In Fontenot v. Ramey Well Service, 191 So.2d 353 (La.App. 3d Cir. 1966), we held that an employee who sustained an injury which left him with an area of numbness or anesthesia about six inches wide, extending around a part of his chest and back, was not entitled to recover compensation benefits for the impairment of a physical function, because the impairment was not serious. I think the facts in that case were much more favorable to the plaintiff than are the facts in the instant suit. Certainly the decision rendered by our court in that case is applicable here.
If the majority opinion is allowed to stand, it may mean that in every compensation suit where a slight degree of pain is shown, but not enough to be disabling, compensation benefits will have to be awarded under LSA-R.S. 23:1221(4) (p), even though the pain is as insignificant as it appears to be in this case. I believe such a holding violates the spirit and the intent of, as well as the language used in, the Workmen's Compensation Act.
For these reasons, I respectfully dissent from the majority opinion rendered on rehearing.
NOTES
[1] Professor Malone points out that, where a comparison of pre-injury and post-injury earnings does not meaningfully relate to disability, then the courts have sometimes used medical disability percentage as a guide to the award. Malone, Section 277. See, e. g., Blanchard v. Pittsburg-Des Moines Steel Co., 223 La. 577, 66 So.2d 342.
[1] We disregard medical estimates that there would be a lack of residual, made during the first six months treatment during disability. These doctors did not reexamine the claimant following his initial discharge, his return to work per their instruction, and the persistence of symptoms. The orthopedists testifying made the sole evaluation of the claimant's residual disability between his discharge in March, 1967 and the trial in October, 1968.
[2] Subsections (1), (2), and (3) of LSA-R.S. 23:1221 relate to awards for, respectively, temporary total disability, permanent total disability, and partial disability. Subsection (4) sets out a schedule for specific losses.
[3] This section was amended by Act 25 of the Extraordinary Session of 1968 so as to raise the maximum weekly compensation payable from $35 to $45, and the minimum from $10 weekly to $12.50. However, no contention is made that these new weekly compensation rates apply to accidents occurring before the amended section became effective.
[1] Orlando v. Polito, 228 La. 846, 84 So. 2d 433 (1955) and cases cited at 84 So. 2d 434.
[2] Mentioned three times.
[3] "The residual is not severe enough to handicap the plaintiff in gaining employment nor to prevent him from performing his duties (except on occasional days of unusual severity)."
[4] An oral history to the effect that work caused him pain on some occasions, but this pain never caused him to seek medical attention.