REDMANN, Judge.
Concluding that plaintiff workman “sustained permanent impairment to a physical function (use of his hand)”, the trial judge, citing La.R.S. 23:1221(4) (p), awarded workmen’s compensation of $49 for 100 weeks (subject to credit for payments made).
Defendant’s appeal argues that plaintiff’s compensation must be limited either to the period of his temporary disability, § 1221(1), or to a percentage during 150 weeks for partial loss of use of the hand, § 1221 (4) (e) and (o). Plaintiff’s answer argues that he is permanently and totally disabled and should receive compensation during 500 weeks.
A wrist injury at work in June 1972 caused a ganglion (a cyst arising from weakness in tendon sheath or joint capsule). The ganglion was removed by surgery in August 1972, and plaintiff returned to work in October (he was terminated in November for unrelated reasons). The ganglion recurred in December 1972 and was again removed by surgery in January 1973, and plaintiff was able to work by April. The ganglion again recurred in June 1973 and was for the third time surgically excised in January 1974. Compensation had been paid for the two earlier periods of disability. This suit was filed in August 1973. Trial was in February 1974 and plaintiff was admittedly disabled as of trial because of the recent surgery.
The trial judge rejected plaintiff’s claim for permanent total disability. The medical evidence does not corroborate this claim. Construed most favorably to plaintiff, the evidence proves that when the ganglion recurs it causes him pain at work but not disabling pain; that the surgical excision of the ganglion does temporarily totally disable him; that after recovery from surgery plaintiff retains a slight (about 2%) disability of his wrist; and that (because 20% of surgically-excised ganglia do recur and because of plaintiff’s own history) plaintiff’s ganglion may recur from time to time.
This is not a case of permanent total disability. But it is also not an ordinary case of a single temporary total disability. Nor is it an ordinary case of a residual partial disability of a hand, in which the percentage of loss of use determines the percentage of benefits, as in Babineaux v. Great American Ins. Co., 1964, 245 La. 718, 160 So.2d 591.
Babineaux notes a legislative intent “to liberalize the compensation act and extend coverage so as to include, as nearly as possible, recovery for every type of injury . . . . ” 160 So.2d at 593. Nevertheless, R.S. 23:1221(4) (p) does not provide for every case not earlier covered in § 1221, but only for those of disfigurement or serious permanent impairment of the usefulness of a physical function: subsec. (4) (p) “is not a catch-all clause,” Bergeron v. New Amsterdam Cas. Co., 1962, 243 La. 108, 141 So.2d 832 (holding a miscarriage not compensable under subsec. (4)(P))-
In Babineaux a distal phalanx of an index finger had been amputated and therefore both the permanent impairment of physical function and its worst result (in terms of disability) were at all times present (and never disabled the worker). Our plaintiff may be said to have a permanent impairment (of the function of the tendon sheath or joint capsule) which is always present, but its result — the disabling cyst — is not: and the impairment has temporarily totally disabled the worker three times already and may disable him again in the future.
In Ventress v. Danel-Ryder, Inc., La. App.1969, 225 So.2d 765, a permanent impairment “recurrently produce [d] significant pain and soreness,” id. at 768. There the medical opinion of 10% impairment or loss of function was “based upon these recurring episodes of pain, not substantial enough to be disabling. . . .” Id. at 768.
*653 In our case the estimate of 2% disability of the wrist is not based upon the recurring episodes of disability, and the formula used in Babineaux and Ventress would therefore not suffice. The trial judge’s recognition of the percentage formula’s insufficiency presumably prompted his maximum award for permanent impairment of function.
We conclude, however, that the statute affords more exact compensation in its temporary total disability provision, § 1221(1), which will both compensate the worker for each week he is actually disabled during 300 weeks and keep available during 300 weeks the possibility of reopening the judgment under § 1331 if recurrence becomes so frequent as to totally and permanently disable the worker by making him unable to compete in the unskilled labor market. At the same time, a judgment of temporary total disability will assure to the employer (or insurer) that it will not pay for disability if the ganglion does not recur.
At trial time, plaintiff was admittedly disabled and was expected to be unable to work for two or three weeks. Our judgment will allow him to recover for that period of his disability found by his doctor (who happens to have been selected by the employer), and will also allow him to recover for any subsequent disability due to ganglion recurrence. Any "dispute can be decided by the trial court. (Presumably the trial-time disability has been paid and thus no weekly benefits will be immediately due under our judgment.)
We must, however, award to plaintiff statutory penalties upon the medical expenses which the insurer refused in August 1973 to provide. The insurer-selected doctor proposed the third operation at that time and scheduled plaintiff for hospital admission. Hospital admission was at that time refused because the insurer declined to pay the hospital. No “probable cause”, R.S. 22:658, for this refusal was shown and therefore a 12% penalty (on the January-February 1974 medical expense) and attorney’s fees are due. The attorney’s actions included a demand letter and filing of suit before the insurer agreed to pay the medical; for these services (prior to trial) we believe a $150 fee is adequate. The 12% penalty will not apply to the compensation benefits for surgery-caused disability, since it is not shown that those benefits were ever demanded of the insurer or that the insurer knew the third surgery was performed, except as of trial when the insurer’s counsel stipulated the insurer would pay those benefits as well as medical.
The judgment is amended to decree plaintiff temporarily totally disabled by an intermittent disability resulting from his accident of June 27, 1972, and to award to plaintiff $49 a week during the periods of his recurring disability, not beyond 300 weeks from June 27, 1972, with legal interest on any unpaid installment from its due date until paid, and with credit for all compensation already paid; together with 12% penalty on all medical expenses of the January 1974 surgery, $150 attorney’s fees, and all costs.