315 So.2d 743 (1975)
Sam P. TANTILLO
v.
LIBERTY MUTUAL INSURANCE COMPANY et al.
No. 55788.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*744 Joseph A. Sims, Jr., Sims, Mack & Sims, Hammond, for plaintiff-applicant.
Robert J. Vandaworker, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendants-respondents.
BARHAM, Justice.
Plaintiff, Sam P. Tantillo, sued Foster Wheeler Corporation, his employer, and Liberty Mutual Insurance Company, the employer's insurer, for workmen's compensation benefits, including statutory penalties and attorney's fees, allegedly due him for an injury to his right knee sustained on the job on July 6, 1966. Plaintiff alleged that he is totally and permanently disabled within the purview of the Workmen's Compensation Act.
The trial court rendered judgment in favor of plaintiff, awarding compensation at the rate of $35.00 per week for a period of one hundred seventy-six weeks from July 6, 1966 to December 3, 1969, subject to a credit in the sum of $1,750.00. In his reasons for judgment, the trial judge stated that an evaluation of the "* * * medical testimony in the light of the testimony of the lay witnesses to the effect that plaintiff was unable to perform many of the duties of a carpenter, including climbing scaffolds and similar hazardous work, and stooping in cramped positions for long periods of time, * * *" was the basis of his award for total disability through December 3, 1969.
The appellate court reversed the trial court and in its reasons for judgment, quoted from Square v. Liberty Mutual Insurance Company, 270 So.2d 335, 338 (La.App.1st Cir. 1972), writ refused 273 So.2d 41 (La. 1973):
"Medical testimony in a workmen's compensation case is of primary importance in determining claimant's disability. If there is no conflict of the medical testimony, then the lay testimony should not be considered by the court. * * *" 270 So.2d at 338.
*745 We granted writs to consider the evidentiary rule established in the courts of appeal which directs that lay testimony should not be considered by the trial court when medical evidence is not in conflict. We clarify and modify that evidentiary rule and reverse the court of appeal.
Plaintiff, a carpenter, injured his right knee on July 6, 1966 when he fell while engaged in moving scaffolding. He was treated on the day of his injury by Dr. A. B. Cronan, Jr., a general practitioner, who removed some bloody fluid from the medial aspect of the right knee joint. Dr. Cronan immediately referred him to Dr. Alvin Stander, an orthopedic surgeon. Dr. Stander found considerable tenderness over the medial aspect of the right knee joint, and made a diagnosis of a medial ligament strain. A compression dressing was applied and crutches prescribed. Two days later, forty cubic centimeters of blood tinged fluid were removed from the knee joint and a cylinder cast was applied; the doctor then expressed the view that plaintiff could have an internal derangement of the knee joint. On July 20, the cast was removed and fifty cubic centimeters of blood tinged fluid were drawn from the joint. A bandage was applied to the area and plaintiff was advised to continue "crutch walking." On July 27, plaintiff continued to complain of pain and told the doctor he was unable to stand on his right leg without considerable discomfort. Swelling of the joint was still apparent, although there was some improvement.
On August 22, Dr. Stander could find no definite evidence of an internal derangement, but plaintiff continued to experience pain and the doctor noted slight atrophy of the right quadriceps muscle group. On subsequent weekly visits the doctor observed some improvement, but plaintiff continued to complain of pain. Plaintiff apparently required a cane for support during all of this period.
On September 20, 1966, Dr. Stander found plaintiff's condition to have worsened, detected a "click" in the knee and scheduled plaintiff for surgery on September 26, when an arthrotomy was performed, and the medial meniscus was removed. Dr. Stander observed the plaintiff after surgery until the first part of December. Upon plaintiff's last visit to Dr. Stander in late 1966, plaintiff was told that he could return to work on a gradual basis and that he was to return to the doctor's office only if he had some difficulty. On March 1, 1967, Dr. Stander wrote to the insurance company, informing them that plaintiff had not returned for a visit. He apparently assumed plaintiff was having no difficulty and therefore opined that plaintiff was capable of doing the type of work he was doing at the time of his injury, with a five percent disability of the extremity.
Although plaintiff did not return to Dr. Stander, he consulted Dr. George C. Battalora, an orthopedic surgeon, on January 30, 1967. Plaintiff told Dr. Battalora that he had been discharged by Dr. Stander on December 20, 1966, but that he continued to have pain and swelling in his knee and had been unable to return to work. The doctor deposed that plaintiff complained that he could not climb stairs, that he could not assume a squatting position and that his knee would "give away" at times. Dr. Battalora found the left thigh circumference to be five-eighths of an inch larger than the other, indicating atrophying of muscle in the right extremity. There was synovial thickening and mild effusion in the right knee; although he found complete motion in the right knee, pain was exhibited on maximum flexion of the leg and pain occurred with palpitation over the patella. Although previous X-rays were negative, X-rays now revealed evidence of spurring around the patella. He considered the plaintiff to have a permanent impairment of approximately ten per cent of the right extremity. He told plaintiff he could return to work in "non-hazardous" conditions, cautioning him to avoid climbing, and to return in three months for reevaluation *746 if pain persisted. He re-examined plaintiff on May 15, 1967 and found no improvement in the knee. Pain was occasioned by too much standing, walking, or heavy lifting.
Again, on June 30, plaintiff visited Dr. Battalora, who found little improvement. The doctor was still of the opinion that plaintiff could resume work in non-hazardous situations, but cautioned against climbing. June 30, 1967 was the last time Dr. Battalora saw plaintiff. The doctor testified on deposition that if the swelling had completely disappeared one month from the date of the last visit he "probably" would have permitted plaintiff to resume all activities.
The last medical evidence is the deposition of Dr. Byron M. Unkauf, an orthopedic surgeon who examined plaintiff on December 3, 1969. Plaintiff told him that he had returned to work in 1967, about fifteen months after his accident, but that he had trouble kneeling and climbing ladders. He complained of swelling of the knee and related that his knee would "give way." Dr. Unkauf, on the basis of this one examination, and the plaintiff's prior three-year medical history, opined that the plaintiff could do the "greater portion of his carpentry work," although his knee would continue to trouble him on occasion. It was his medical opinion that the plaintiff had a patella femoral chondromalacia which was aggravated by his injury of July 6, 1966, that calcification had occurred in the knee joint, and that the right extremity had a ten to fifteen per cent permanent disability.
The trial testimony consisted entirely of lay testimony. All of the medical evidence was taken from letter reports or other depositions. No doctor testified at the trial of the case before the trial judge. Plaintiff's testimony was basically that he had tried to go to work in 1967; that he had wanted to return to work because he needed money to keep his son in college; and that the $35.00 per week compensation was insufficient for his support. However, he testified that when he attempted several jobs, he had been discharged from all of them because of his inability to do all of the necessary work and to climb. The only job at which he worked for any length of time was one on which his son was the foreman; his son hired him and made it possible for plaintiff to do only work which required no climbing or squatting.
The son testified, corroborating his father's testimony, further stating that because his father could not do much of his farm work, he had been helping with some of the farm labor. A co-employee of the plaintiff testified regarding the injury and his knowledge of the plaintiff during the ensuing years. He corroborated much of the testimony of the plaintiff. All of the lay witnesses testified that plaintiff continued in pain with his knee. Plaintiff also testified that he had had a heart attack shortly after seeing Dr. Unkauf.
Court proceedings, when they serve the highest purpose, are designed to search for truth, so that a proper application of the law to the true circumstances will achieve justice in the case. Evidentiary rules have been enunciated over the centuries and courtroom experience provides the basis for the evolution of rules that are helpful in ascertaining the truth. Experience has taught that certain types of evidence generally should be accorded greater weight than others. We have found that when evidence meets certain criteria, it can usually be accorded great reliability. Thus, expert medical testimony as to illness or injury is generally preferable. However, almost all rules regulating the reliability of evidence are generalities subject to exceptions under varying circumstances.
Another generality with a great amount of validity is that the truth is more likely to be found in the full context of all the evidence presented at the trial. We have even established a rule that the one who views the witness and hears his testimony *747 is the better judge of the reliability of that testimony. In the case at hand, the only testimony heard by the trial court was lay testimony.
Courts often confuse medical evidence with medical opinion. Medical evidence in its narrow aspect is the doctor's testimony as to the factual basis for his diagnosis, prognosis, and medical opinion. An important part of the medical evidence which supports the expert opinion of the physician is the history of the patient taken from the patient himself, which is much like the testimony of the plaintiff offered on the trial of the case.
Physicians rely upon a patient's history, his candor in relating that history, observations of reactions to false tests as well as accurate tests, observations of normal activity and demeanor during examination and treatment, and many non-clinical factors. Laymen are certainly able to relate their own observations of the activity and demeanor of one claiming injury and pain.
In many cases, including the one we consider, much of the medical evaluation must be based upon subjective symptoms. All diagnoses cannot be objectively supported. Physicians recognize that medical diagnoses, although not clinically established, may be correct. In most countries of the world, and in the medical treatment of the greatest portion of the world's population, physicians seldom resort to laboratory analyses for diagnoses and treatment of illness.
Judges who hear and review numerous cases involving physical injury and disease, including workmen's compensation cases, like administrative boards in other states which constantly review workmen's compensation cases, are not experts in the field of medicine, but they often develop expertise, some quantity of special knowledge of medicine not shared by people in other work. See 3 A. Larson, The Law of Workmen's Compensation, § 79.53 (1973 ed.). In the final analysis it is the judge's responsibility in a workmen's compensation case to determine if and to what extent a plaintiff suffers a disabling injury or disease which is compensable. He cannot delegate this function to anyone else, including the medical witnesses.
It is generally true that non-contradicted medical testimony of a strong character cannot be overcome by lay testimony to the contrary. In Louisiana, under numerous factual situations, contrary lay testimony has not been successful in overcoming medical testimony that there was no injury or disability. See Larson, supra § 79.52, n. 23 at 191.
However, in Wynn v. Vaughn, 33 So.2d 711 (La.App.2d Cir. 1948), the appellate court, with Judge Hardy as its organ, held that the plaintiff had established his claim of the existence of physical pain and suffering, despite findings of physicians that there were no objective symptoms of disability. See also, Gates v. Ashy Construction Company, Inc., 171 So.2d 742 (La.App.3d Cir. 1965).
Our Court long ago interpreted the meaning of La.R.S. 23:1317 which provides that there must be objective conditions or symptoms of injury.[*] In Frantz v. Schroeder, 184 La. 945, 168 So. 110 (1936), Justice Fournet quoted with approval from Brown v. Joseph Rathbone Lumber Co., 11 La.App. 599, 123 So. 383 (Orl. Cir. 1929), that the object of that provision of the compensation law was to prevent imposition and fraud and "* * * [i]t is only *748 necessary that there should have been `objective conditions or symptoms proven,' and such subjective result as may be imputed to the original objective condition is compensable under the law."
We do not denigrate medical evidence or medical opinion based upon sound medical findings; nevertheless, as was said in Corral v. Crawford Homes, Inc., 113 So.2d 820, 822 (La.App.1st Cir. 1959), the general principle that lay testimony will not be considered in the absence of conflict in the medical testimony is not an "* * * artificial and iron-clad rule preventing the trial court from making an independent evaluation of the credibility of the claimant and reaching a factual conclusion based upon all the evidence in the record, lay and medical."
In the case before us the medical evidence agrees that the defendant was injured, that the injury necessitated surgical removal of the medial meniscus, that the leg which had been injured atrophied, that plaintiff complained of pain and swelling continually and that he retained at least a five to fifteen per cent permanent disability of the knee. The lay testimony is unequivocal that plaintiff continues to suffer pain and remains unable to climb or to make quick or unusual flexions of the injured knee. The final conclusion of Dr. Battalora is that most people suffer pain upon flexion of the knee joint after arthrotomy, and Dr. Unkauf, who last saw the plaintiff, could only opine that after a history of almost four years of pain and swelling, the plaintiff should be able to do the greater portion of his carpentry work.In Larson, supra , § 79.53, dealing with reasons for relaxing the rule, it is stated:
"* * * As has been stressed at length earlier, disability is not a purely medical question: It is a hybrid quasimedical concept, in which are commingled in many complex combinations the inability to perform, and the inability to get suitable work. * * *"
A consideration of the medical and lay testimony brings us to the conclusion that the plaintiff suffered total and permanent disability to perform all of the functions required in the carpentry trade.
We reject the rule in the appellate court opinion that "* * * [i]f there is no conflict of the medical testimony, then the lay testimony should not be considered by the court * * *." We therefore overrule specifically that holding in Square v. Liberty Mutual Insurance Company, supra; Jones v. Quick Shop Food Store, 263 So.2d 73 (La.App.1st Cir. 1972); Thornton v. American Mutual Liability Insurance Company, 216 So.2d 910 (La.App.1st Cir.1968); Ezell v. Employers Insurance Co. of Wausau, 212 So.2d 500 (La.App.2d Cir. 1968); Laroux v. Hunt Lumber Company, Inc., 209 So.2d 768 (La.App.3d Cir. 1968); Lee v. Royal Indemnity Company, 149 So.2d 606 (La.App.1st Cir. 1963); Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314 (1959); Davis v. Clyburn, 109 So.2d 126 (La.App.Orl. Cir. 1959); Washington v. Swanner, 98 So.2d 913 (La.App.Orl. Cir. 1957); and Powell v. Liberty Mutual Insurance Company, 80 So.2d 902 (La.App.2d Cir. 1955). By overruling this specific expression in those cases, we do not conclude that the cases were wrong in result. It is only that we disapprove of the rule of evidence as expressed.
It is generally true that medical testimony which is not in conflict cannot be overcome by lay testimony. Nevertheless, in every case it is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability. Great weight, almost to the point of exclusion of other evidence, is given to uncontradicted medical evidence which is directed toward a complex scientific question. However, in all cases, it is the judge's function to determine the weight which is to be accorded the medical testimony as well as the lay testimony. *749 Lay testimony has great probative value in establishing certain facts, such as the existence and location of pain and the actual ability or inability of a claimant to perform certain physical functions or to pursue his regular employment. See Larson,supra, at § 79.53. We conclude that lay evidence must be weighed with consideration for the medical fact to be established, of the conclusiveness and validity of the medical evidence and the materiality, relevance and reliability of the particular lay evidence, according to its focus, foundation and its source.
We have reviewed the record for quantum. We can find no basis for terminating plaintiff's workmen's compensation on the third day of December, 1969, as determined by the trial court. The unqualified and uncontradicted testimony of the lay witnesses is to the effect that the plaintiff was totally disabled to perform the labors required of him in the carpentry trade to the day of his heart attack. The testimony at the trial in 1972-73 is that plaintiff continued to complain of pain, and exhibited instability of the right leg, swelling of the knee, and inability to have complete flexion of the knee joint.
Although the heart attack in 1970 may have been disabling in and of itself, we are persuaded from all of the testimony in record, medical and lay, that because of the injury to the knee, plaintiff, as of the day of trial, was totally and permanently disabled to perform all of the functions required of the special trade he was engaged in at the time of his compensable accident.
For the reasons assigned, the judgment of the court of appeal is reversed.
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff and against defendants:
"(1) Awarding plaintiff workmen's compensation benefits at the rate of $35.00 per week for a period of four hundred weeks from July 6, 1966, subject to a credit in the sum of $1,750.00 previously paid, together with interest at the statutory rate on all past due amounts from date due until paid;
(2) Denying all other claims of plaintiff;
(3) Fixing the expert witness fee of Dr. George C. Battalora at $100.00 and the expert witness fee of Dr. Byron M. Unkauf at $50.00, said fees taxed as costs; and
(4) Casting all costs against defendants.
Reversed and rendered.
SUMMERS and MARCUS, JJ., concur.
NOTES
[*] La.R.S. 23:1317 provides, in part:

"* * * The court shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence, and all compensation payments provided for in this Chapter, shall mean and be defined to be for only such injuries as are proven by competent evidence, or which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. * * *"