325 So.2d 893 (1976)
Lizzie Claudine FARRAR
v.
GUY ATKINSON COMPANY et al.
No. 12794.
Court of Appeal of Louisiana, Second Circuit.
January 6, 1976.
*894 James E. Franklin, Jr., Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts, by Alex F. Smith, Jr., Shreveport, for defendants-appellees.
Before PRICE, MARVIN and GLADNEY, JJ.
MARVIN, Judge.
Miss Farrar, the plaintiff-employee in a workmen's compensation proceeding appeals from the lower court rejecting her demands for total and permanent disability, and awarding instead compensation benefits for impairment of a physical function under R.S. 23:1221(4)(p). We affirm.
Plaintiff's accident occurred July 26, 1974, when she was attempting to move with mechanical and hydraulic assists, a pallet loaded with several machined parts. She sensed pain in her spine in the area of the top of her shoulders, but worked for the remainder of the day and a portion of the next working day. The following day (Sunday), she reported to the emergency room of a local hospital for medical attention. The diagnosis was immediately made, and later confirmed, as a herniated cervical disc.
Miss Farrar had been afflicted with osteoarthritis for several years. In 1968, she had lower back surgery in Texas which resulted in a fusion of two or more lumbar vertebrae. In 1973, about one year before the date of the accident complained of, she underwent cervical surgery in Shreveport which resulted in a fusion of C-5, C-6 and C-7 vertebrae. In each instance mentioned, she was paid workmen's compensation benefits and received a "settlement" from each employer for whom she was working at the time.
Miss Farrar began working for defendant-employer on May 28, 1974, some two months before the accident complained of. On her application for employment she denied receiving any compensation benefits and did not acknowledge her prior accidents or surgery until the employer learned otherwise and confronted her with the information.
Following her 1973 surgery, Miss Farrar worked for two other employers without medical incident before she obtained employment with the defendant-employer.
The orthopedic surgeon who performed the 1973 operation was the treating physician of Miss Farrar and eventually performed cervical surgery, after conservative treatment, following the July 26, 1974 accident. On August 28, 1974, the orthopedist surgically removed the intervertebral disc at the C-7 and T-1 interspace and fused the two vertebrae. According to this doctor, who was Miss Farrar's sole medical witness, the 1973 fusion resulted in a ten percent permanent partial disability of the spine, while the 1974 fusion resulted in an additional ten percent disability of the spine. The 1973 and 1974 vertebral fusion produced 30-40 percent limited motion of the neck.
Miss Farrar returned to work on Monday, November 11, 1974. She worked eight hours for four days of that week and worked ten hours on Thursday of that week. The following week, she worked *895 eight hours Monday, ten hours Tuesday, and about one and a half hours Wednesday, when she informed her supervisor that she could not continue working. She has contended since that time, and contends here, that she is totally and permanently disabled because of the pain which she says prevents her from working. In support of her testimony, she offers the testimony of a husband and wife who are her neighbors, and the testimony of the orthopedist, who was the only medical witness below.
As appellant, Miss Farrar generally contends the lower court erred in not awarding her benefits for total and permanent disability and alternatively, that the award below of $25.00 per week for 100 weeks under the impairment section (R.S. 23:1221(4)(p)) should be increased to the maximum $65.00 per week. Collateral arguments made here concern the lower court's rejecting her demand for attorney's fees and penalties (R.S. 22:658, R.S. 23:1201.2) and the receipt into evidence of a letter from Miss Farrar's orthopedist to the attorney for defendant-employer and workmen's compensation insurer dated January 29, 1975, that Miss Farrar was able to return to work. It was at this time that the insurer terminated weekly compensation benefits.
Miss Farrar's orthopedist testified during the trial. After he had left the stand and when defendants were presenting their side of the case, defense counsel, under oath, identified the letter he had received from the orthopedist as mentioned above. The letter was accepted as evidence by the trial court over plaintiff's objection that it was hearsay and that the doctor was not subject to cross-examination. The receipt of the letter was offered as a defense to the allegations of plaintiff for attorney's fees and penalties and was properly admitted when defendants were presenting their evidence. Indeed, except by agreement between the litigants, the letter could not have been admitted as a defendant's exhibit when the doctor was on the witness stand because the doctor was plaintiff's witness and the offering was made, not to show the truth of its contents, but to show that it was received by defense counsel a day or two after it was dated. The doctor's testimony while under oath, in any event, is not contrary to the content of the letter.
TOTAL DISABILITY (1221(2)) OR SERIOUS AND PERMANENT IMPAIRMENT OF THE USEFULNESS OF A PHYSICAL FUNCTION (1221(4))
R.S. 23:1221 includes three approaches of determining the period and amount of the weekly compensation award to an injured employee: (1) Total disability, either temporary or permanent (subsections 1 and 2); (2) Partial disability (subsection 3); and (3) Scheduled losses (subsection 4). See Malone, Louisiana Workmen's Compensation Law and Practice, Chapter 13, for excellent comparison of application by the courts of the statutory approaches.
Partial disability apparently was intended to cover those situations where the injured employee, after injury, is able to perform work of some degree, but because of his disability he has lost some of his earning capacity. This subsection was appropriate for as long as total disability was defined as lack of ability to do work of "any reasonable character." Since the definition of total disability has been expanded to mean lack of ability to do the same work after the injury as before, this subsection has not been widely applied.[1]
In this instance the issue is between a scheduled loss under subsection four and total disability to perform work of the same kind the employee was performing at the time of the accident under *896 subsections one and two. Where there is a physical injury but no resulting disability as that term has been defined by the courts, the schedule of R.S. 23:1221(4) serves as an arbitrary criterion for determining compensation. Where the physical injury has an appreciable effect on the worker's ability to perform the same operations as he did before the accident, or where the injury produces substantial pain, neither the schedule loss nor the medical estimate shall apply, and compensation for total disability shall apply. See Malone, supra, section 278, 1964 Supp.; also, Ball v. American Marine, 245 La. 515, 159 So.2d 138 (1964); Griffin v. Liberty Mutual, 131 So.2d 153 (La.App. 2d Cir. 1961); and Cormier v. Zigler Shipyards, 264 So.2d 236 (La.App. 3d Cir. 1972).
The issue of substantial pain is essentially a credibility question and we reverse only where the trial court, in weighing the lay and medical testimony, has committed manifest error. Here we adopt some of the conclusions of the lower court. Miss Farrar's work required her to clean machined metal parts weighing from a few pounds to several hundred pounds, using mechanical and hydraulic powered assists. Other employees testified as to the manner in which this work was performed. Plaintiff acknowledged that she had applied for unemployment benefits wherein she stated she was able to work and that she had also applied for a job with another employer, Western Electric, since being discharged by her doctor as able to work after the 1974 accident. Her doctor unequivocally testified that she could return to her work without appreciable pain or discomfort; that her complaints following the 1974 surgery were the same type complaints made by her after the 1973 surgery, following which she did resume working for several months before the 1974 accident. The trial court also noted that Miss Farrar's medical history revealed some painful episodes while working before the 1974 accident which the orthopedist said resulted from arthritis, which she yet has. The lower court concluded ". . . all [this], when added together, causes us to discount the plaintiff's description (as well as the lay witnesses) of her present condition and to accept the analysis of her treating physician. . ." Emphasis supplied.
Appellant contends the lower court erred in these conclusions, contrary to the recent case of Tantillo v. Liberty Mutual, 315 So.2d 743 (La.1975). There the Supreme Court said:
"We reject the rule . . . `* * * [i]f there is no conflict of the medical testimony, then the lay testimony should not be considered by the court * * *.' We therefore overrule specifically [ten cases from 1955 to 1972 by the Courts of Appeal and the Supreme Court, citations omitted]. By overruling this specific expression in those cases, we do not conclude that the cases were wrong in result. It is only that we disapprove of the rule of evidence as expressed.
"It is generally true that medical testimony which is not in conflict cannot be overcome by lay testimony. Nevertheless, in every case it is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability. Great weight, almost to the point of exclusion of other evidence, is given to uncontradicted medical evidence which is directed toward a complex scientific question. However, in all cases, it is the judge's function to determine the weight which is to be accorded the medical testimony as well as the lay testimony. Lay testimony has great probative value in establishing certain facts, such as the existence and location of pain and the actual ability or inability of a claimant to perform certain physical functions or to pursue his regular employment. See Larson, supra, at § 79.53. We conclude that lay evidence must be weighed with consideration for the medical fact to be established, of the *897 conclusiveness and validity of the medical evidence and the materiality, relevance and reliability of the particular lay evidence, according to its focus, foundation and its source." 315 So.2d 748-749.

We do not agree that the trial court acted contrary to Tantillo. The opinion below is to the effect that the trial judge did not reject and refuse to consider the lay testimony, but instead that he considered ". . . the plaintiff's description (as well as that of the lay witness) . . ." and that he discounted, or did not accept at full face value, its credibility. We find no manifest error or error in legal application in this respect by our brother below.
A motion for a new trial was made by plaintiff and considered below. The prime allegation was that the ". . . testimony of plaintiff, two lay witnesses [etc]. . ." established that plaintiff was still experiencing pain and could not work. This allegation concerning the lay testimony and the trial court's ruling on the motion for a new trial substantiates our conclusion that the lower court originally, and on the motion for a new trial, considered, but did not accept, the credibility of the testimony of plaintiff and the lay witnesses that Miss Farrar was totally disabled because of substantial pain. In the opinion below on the motion, the lower court said:
"As we stated during oral argument on this Motion, we are not kindly disposed toward reconsidering the question of the plaintiff being totally and permanently disabled."
R.S. 23:1221(4)(p) provides in part where the usefulness of a physical function is seriously and permanently impaired, as is the case here, ". . . the court may allow such compensation as is reasonable. . . not to exceed sixty-five per centum of wages during one hundred weeks." Cases interpreting this statute clearly and without exception hold that while the period of compensation must be 100 weeks, the amount of compensation is left to the sound discretion of the court. See this court's opinion, per Bolin, J., Griffin v. Liberty Mutual, supra, at page 158. In its opinion on the motion for a new trial, the lower court categorized Miss Farrar's situation as "minimal." We find no abuse of discretion by the trial court.
Appellant also contends the lower court erred in allowing credit on the award made for the $1,755.00 paid in compensation benefits while Miss Farrar was temporarily but totally disabled. The compensation statute expressly requires this.
"Where compensation has been paid under subdivisions (1), (2), or (3), of R.S. 23:1221, the amount of such payment shall be deducted from any compensation allowed under subdivision (4) thereof or under Sub-part C of this Part." R.S. 23:1223. (Emphasis supplied)
There was no abuse of discretion below in the denial of penalties and attorney fees under the circumstances presented.
At appellant's cost, the judgment below is
Affirmed.
NOTES
[1] See Malone, supra, section 278, page 341.