MARVIN, Judge.
The employer and insurer appeal a workmen’s compensation award to plaintiff. We reverse.
For about 10 years prior to his injury while employed by defendant-employer, the 39-year-old plaintiff had worked off and on at various jobs: as a truck driver, in air conditioning and sheet metal work, on utility line construction and for the last two or three years in rough carpentry work. He was employed by the defendant construction company for about two or three weeks as such a carpenter when he fell, fracturing one or more ribs and injuring his back on July 18, 1973. The rib fractures healed uneventfully and without residual disability.
Plaintiff saw a general practitioner in Coushatta (Dr. Willis) who diagnosed and treated him for a strain of the back. The Coushatta doctor referred him to a Shreveport orthopedist (Dr. Fox) who confirmed the diagnosis and treatment. Plaintiff thereafter saw a Ruston doctor (Dr. Bleich) who hospitalized and treated him for about a week for a low back strain. After this hospitalization, plaintiff resumed his visits to Dr. Willis in Coushatta.
Another Shreveport orthopedist who visited professionally in Coushatta (Dr. Williams), saw plaintiff on one occasion there. This was on September 18, 1973. His diagnosis at that time was back sprain.
On November 2 and November 30, 1973, plaintiff saw Dr. Williams in Shreveport. In January, 1974, under Dr. Williams’ supervision, a myelogram was performed on plaintiff in a Shreveport hospital. The myelogram, according to Dr. Williams, but dispüted later by other doctors, “seemed to indicate a ruptured disc.”[1] Plaintiff declined back surgery. Dr. Williams last saw plaintiff about January 16, 1974. He testified:
“In my opinion at that time he was disabled.
“[Q] . . . How long did you anticipate that his disability would continue, assuming he did not have the surgery?

“I cant’t—I don’t know the answer to that question.

“[Q] . . . But do you feel he would have any limitation in bending, stretching, lifting or anything, with his back?
“I would impose no limitation upon him.”
(Emphasis supplied).
On April 17, 1973 and April 30, 1975, at defendant’s request, plaintiff was seen by Dr. King, a Shreveport orthopedist. On July 1, 1974, and May 14, 1975, at defendant’s request, plaintiff was seen by Dr. Kingsley, an Alexandria orthopedist. Dr. Fox, Shreveport orthopedist, saw plaintiff as a treating physician at Dr. Willis’ request, on August 2 and 7, 1973, and [apparently at *892 defendant’s request] on May 6, 1975. Dr. Willis of Coushatta saw plaintiff several times in 1973 and once, very briefly, on March 15, 1974. These doctors were generally in agreement that plaintiff suffered only a strain of his back in the accident of July 18, 1973, without residual effect, and that he did not have any symptoms of a ruptured disc.
Dr. Fox, Dr. King and Dr. Kingsley, all orthopedists, testified that the myelogram was accurate as a diagnostic tool only in about 75 percent of the cases where it has been employed. Dr. Kingsley stated that the myelographic x-ray studies did not show the presence of a disc defect and explained that the x-ray “defect” which “seemed to indicate a ruptured disc” to Dr. Williams, was caused by a leakage of the dye from the spinal canal.
Other significant facts in the record come from plaintiff and his mother, with whom he has been living. Plaintiff testified that he has not seen a doctor relative to complaints of back pain since March 15, 1974, and that he has not had any medication prescribed for him since that time by any doctor. Trial was held May 23, 1975. Plaintiff did testify that five or six months before trial he took some pills belonging to his mother but they did not do him “any good.” His mother testified that he has not appeared to be in pain in “two, three, four or five months, something like that.” Plaintiff testified that in October 1973 and again about the first of the year, 1974, he fell on the steps at home.[2]
Drs. King, Fox and Kingsley also saw and examined plaintiff within the month preceding trial. Each testified to the ef-fact that plaintiff did not have any condition which would prohibit him from returning to work and performing, without difficulty, the stooping, bending, lifting and other activities of a carpenter. These doctors also were unanimous to the effect that plaintiff showed no evidence of an inter-vertebral disc injury in their respective examinations within the month before trial on May 23, 1975, and that plaintiff had fully recovered from any back strain he may have had.
Dr. Williams, who had last examined plaintiff in January, 1974, testified, that .the ruptured disc which seemed to be indicated by the 1974 myelogram was not completely extruded into the spinal canal, but was a “soft, bulging” disc, the type which could resolve itself without surgery.
Plaintiff testified that his back still “bothers” him and while he does not take any medication, he tries to avoid lifting, or sitting down the wrong way, or rolling the wrong way in bed. Plaintiff rides a motorcycle he acquired some time before trial without difficulty. In March, 1975, Plaintiff completed a four-week truck driving school and was briefly [and apparently superficially] examined by the school doctor on March 5, 1975, as a prerequisite to receiving his certificate. No mention was made of plaintiff having any back condition and he was certified by the doctor as physically able to be employed as a truck driver.
Plaintiff was paid compensation benefits through July 22, 1974, totaling some $3,000 for 50 weeks. Suit was filed September 19, 1974, and the trial occurred May 23, 1975. Compensation was discontinued on the basis of medical reports, particularly of Dr. Kingsley who saw plaintiff on July 1, 1974, that plaintiff had recovered from any injuries of the July 18, 1973, accident, was not disabled and was able to resume employment.
*893 Summarizing, we note the complete absence of testimony by any medical doctor who has examined plaintiff since July 1, 1974, to the effect that plaintiff is yet disabled because of the July 18, 1973, accident. Indeed the testimony of three orthopedists who have examined him on and since July 1, 1974, is emphatically and unequivocally to the contrary. The testimony of Dr. Williams does not contradict the testimony of Drs. King, Fox and Kingsley. Dr. Willis and Dr. Bleich’s reports do not contradict Drs. King, Fox and Kingsley.
 It is the totality of evidence, lay and medical, which must be considered in determining disability. Medical testimony, uncontradicted on complex scientific questions, is entitled to great weight. Likewise, lay testimony as to pain and disability is recognized to be of great probative value. See Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (La.1975). The totality of the evidence here compels only one conclusion and that is plaintiff was not disabled within the intent of the workmen’s compensation law on or after July 1, 1974. Plaintiff may have been disabled from the July 18, 1973 accident for several weeks thereafter. He may have been disabled in early 1974, either because of the accident or because of the occurrence at home after the accident. There is no evidence, however, from which we can find or reasonably infer that plaintiff is or was disabled on or after July 1, 1974. The lower court erred in concluding to the contrary.
APPELLEE’S MOTION TO DISMISS APPEAL
Under Articles 2088 et seq. and 5123 et seq., La.C.C.P., appellee provoked rules in the trial court to test the validity and sufficiency of the bond filed below by appellant. After hearing on the issue, the lower court denied and overruled appellee’s motion to have the bond declared invalid or insufficient. Appellee seeks to raise the identical issues here by a Motion to Dismiss Appeal. See La.C.C.P. Arts. 2161 and 2162.
 In Guillot v. City of Kenner, 326 So.2d 359 (La. 1976), the court held that a blank, unsigned printed form was not a bond and an attempt at curing this defect almost one year later, was to no avail. The Court of Appeal dismissed on the grounds that it was without jurisdiction in the absence of a bond. The Supreme Court affirmed the dismissal. The Supreme Court recognized jurisprudence and procedural articles in Guillot, denying to appellate courts jurisdiction to consider the. form, substance and sufficiency of an appeal bond, leaving these matters to the trial court. The court did state that appellate courts have authority to determine whether what purports to be a bond is a bond and whether it was timely filed. What purports here to be a bond is a bond and is timely filed in our opinion.
There was no appeal by appellee or answer to appellant’s appeal, as to the correctness of the trial court’s rulings on the validity and sufficiency of the bond herein. These matters are not reviewable on a Motion to Dismiss. See also Succession of Roth, 230 La. 33, 87 So.2d 719 (1956), and Arrow Construction Company, Inc. v. American Employers Insurance Company, 273 So.2d 582 (La.App. 1st Cir. 1973).
Appellee’s Motion to Dismiss is denied.
At appellee’s cost, judgment below is
REVERSED, and
IT IS ORDERED, ADJUDGED and DECREED that the demands of plaintiff are rejected at his cost.

. Dr. Williams also testified that plaintiff did not give him any history of having been hurt or injured between July 18, 1973, and the date the myelogram was done in January, 1974. Plaintiff, however, testified as to two different “falls” at home, one in October, 1973, and the other at the first of the year, 1974.

. Dr. Willis testified:
“On October 17 [1973], I again saw him. He gave a history of falling trying to go up steps and sustained what he felt like was a reinjury to the back and complained of numbness in his left leg . . .” Dr. Willis said he found abrasions of plaintiff’s back at that time. Plaintiff testified that he sneezed and got a “catch” in his back on the second fall, causing him to hit his head on the landing and “a big, black eye.”