HUMPHRIES, Judge.
Defendants, Rex Angelle, d/b/a Angelle’s Backhoe Rentals, and Reliance Insurance Company, appeal the judgment of the 15th Judicial District Court, Parish of Lafayette, awarding workmen’s compensation benefits to plaintiff, Nary Joseph Smith, of $65.00 per week, commencing on March 10, 1974, during the period of disability but not to exceed 500 weeks, subject to credits for benefits paid, plus 7% interest on all past amounts due from the date of judicial demand. We reverse.
The essential facts surrounding the accident are uncontroverted. On March 10, 1974, plaintiff was working for the defendant laying pipe for a water line in a ditch. In order to secure the pipe, bolts of about 8 inches in length weighing about llh to 2V2 lbs. were used. These bolts were tossed down to the men working in the ditch as they were needed. About 2:00-2:30 in the afternoon, when plaintiff stooped over to properly place a piece of pipe his hard hat slipped forward on his head. Unfortunate *924 ly, at the time plaintiffs hard hat slipped, a bolt was tossed into the hole which struck him on the back of the skull and neck. The blow stunned the plaintiff, caused a minor loss of blood but did not render him unconscious. Plaintiff was able to work again after about 30 minutes of rest. He continued to work until about 8:00 that evening, and for seven days thereafter. The plaintiff states that he continued working despite his headaches but that he was forced to quit working because of pain and numbness.
He was examined by Dr. Bienvenue (who did not testify) and then referred to Dr. Robert D. Martinez for treatment. Dr. Martinez practices the specialty of neurology, which is the diagnosis and treatment of diseases of the central and peripheral nervous system. Dr. Martinez saw the plaintiff first on April 4, 1974 and continued to see him periodically until sometime in July. Dr. Martinez states that he was unable to find any objective symptoms of physical impairment.
Compensation benefits were paid to plaintiff from the date of the accident up until May 19, 1974, as well as all medical expenses.
In August of 1974, the plaintiff consulted Dr. William Cloyd a psychiatrist of Lafayette, Louisiana. This consultation was suggested by Dr. Martinez merely because plaintiff continued to complain. Again, no neurological deficit was discovered. It was the opinion of Dr. Cloyd based upon a single, one hour meeting, that claimant was suffering from a traumatic neurosis, causally connected to the accident of March 10, 1974, and was totally disabled.
In October, 1974, the plaintiff consulted Dr. Kirgis of the Oschner Clinic in New Orleans. Dr. Kirgis reported that the plaintiff complained of numbness, headaches, dizziness and insomnia. However, all tests conducted by Dr. Kirgis revealed normal findings. Further, the doctor believed the plaintiff should not be on prescribed medication, and he doubted whether psychiatric treatment was needed. In a follow-up consultation, May 6, 1975, it was Dr. Kirgis’ opinion that claimant had improved and could return to work in the near future.
The final testimony adduced was by Dr. Jimmie Cole, a doctor of psychology. Dr. Cole saw plaintiff on May 20, 1975, after suit was filed. Pursuant to this examination claimant was subjected to a battery of tests devised for discovery of personality characteristics. Among these tests were the Wechsler Adult Intelligence Scale, the Minnesota Multiphasic Personality Inventory and the Bender Gestalt Intelligence Scale. These tests form the usual battery of psychological tests given most patients. From the results of these tests, Dr. Cole concluded that claimant had a tendency to be inconsistent and overexaggerate his deficits in order to achieve “secondary gain”. Secondary gain was described as a passive reward in the sense that less would be expected from plaintiff by his peer group. Further, Dr. Cole found that claimant has a tendency to malinger. He based this assertion upon the expressed desire of claimant for things to remain as they are.
The remainder of the testimony was by plaintiff, his wife and his brother, the essence of which is that since the accident the plaintiff is a changed man. Other relevant facts adduced by the testimony are that:
(1) Plaintiff engaged in playing softball on several occasions during the summer of 1974.
(2) Plaintiff has sought no other employment due to his supposed incapacity.
(3) Plaintiff no longer takes prescribed medication but takes aspirin for alleged headaches.
(4) Plaintiff consulted the Acadian Mental Health Center but their evaluations, if any, were not presented.
(5) Plaintiff is a frequent user of marijuana dating back several years before the accident.
It is clear that plaintiff has failed to show any objective evidence to support a finding that he is physically impaired and therefore disabled and entitled to compensation. No treating physician could discover any sign *925 of neurological deficit. On the contrary, Dr. Martinez doubted plaintiffs credibility in that he was able to play softball but was unable to work. Mr. Smith demonstrated actions when he was unaware that he was being observed that he denied being able to perform when asked or tested. Dr. Kirgis felt that Mr. Smith was suffering from post traumatic headaches which were resolving, permitting plaintiff to return to work; further, Dr. Kirgis was of the opinion that plaintiff did not need psychiatric treatment or prescribed medication.
The sole issue presented for appeal is: Did plaintiff establish by a preponderance of the evidence that he is suffering from traumatic neurosis as a result of the accident of March 10, 1974?
The jurisprudence is well settled that a person may recover workmen’s compensation benefits for a neurosis induced by a job related accident even though there is no lasting physical impairment. Williams v. Bituminous Casualty Corp., 131 So.2d 844 (La.App. 2d Cir. 1961); Thomas v. St Patrick’s Hospital, 276 So.2d 749 (La.App. 3rd Cir. 1973); Harrell v. Delta Drilling Company, 251 So.2d 97 (La.App. 3rd Cir. 1971).
However, as outlined in the cases, disability based upon a traumatic neurosis must be established by a preponderance of the evidence.
The trial court, relying heavily on Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975) was of the opinion that plaintiff had discharged this burden. It is clear from the Tantillo case, supra, that all evidence both medical and lay may be considered in reaching the decision of whether a workman is disabled. Further, even when medical evidence is un-contradicted, lay testimony may be considered to establish a workman’s disability. However, in the Tantillo, case, supra, it was noted that lay testimony had substantial probative value in the determination of the issue involved. In the instant case, the testimony seeking to preponderate and prove a neurotic disability is supplied by the plaintiff, his wife and brother. Their testimony seeking to establish a neurotic condition, as a result of the accident, is that plaintiff does not engage in as many activities as he used to and that plaintiff tells them that he is depressed and in pain. This is of little probative value.
Testimony seeking to establish a disabling traumatic neurosis, because of the subjective nature of the disability, must be carefully scrutinized in order to protect the employer and his insurer from spurious claims. George v. Lafayette Well Service, Inc., 249 So.2d 212 (La.App. 3rd Cir. 1971); Mouton v. Travelers Insurance Company, 135 So.2d 287 (La.App. 3rd Cir. 1961); Domino v. Wolf's Baking Company, 215 So.2d 648 (La.App. 1st Cir. 1968). This principle of close scrutiny was not deviated from in the Tantillo case, supra.
The only medical evidence supporting plaintiff’s claim is that of Dr. William Cloyd who saw the plaintiff on one occasion for about one hour. In Dr. Cloyd’s letter it is revealed that his diagnosis was based solely on the reports of Dr. Martinez and the subjective testimony of the claimant. In this report Dr. Cloyd indicates claimant’s emotional response is normal and his thought processes cogent and satisfactory. Claimant indicated to Dr. Cloyd that he returned to work for one day following the accident when in fact he worked another seven days before consulting a physician. Further, claimant stated he was hospitalized following the incident without revealing to Dr. Cloyd that the hospitalization was for testing and not for treatment. Finally, Dr. Cloyd places no emphasis on the fact that the report indicates that claimant is inconsistent in his complaints and activities; that he is able to play softball but feels he cannot work; he indicated a stiffness of the left arm to Dr. Martinez but exhibited no deficiency when observed covertly.
Conversely, the evidence for the defendants is clear. No physician could find a neurological deficit of any character. Dr. Kirgis doubted claimant needed psychiatric treatment. Dr. Martinez clearly doubted claimant’s credibility and disability. Dr. *926 Cole, a doctor of psychology, as a result of a battery of tests, determined that claimant’s I.Q. results were low but inconsistent; that claimant exaggerated his maladies all his life; was untruthful in his complaints in order to achieve “secondary gain”; that claimant experiences contentment and satisfaction in continuing his present situation. Although plaintiff states an active desire to return to work, at no time has he sought employment of any nature although encouraged to do so by all the people he consulted.
We do not believe the Tantillo case, supra, compels the trial court to count heads and attach weight to lay testimony if it consists of qualitative vagaries such as: (1) claimant is not as active as he used to be; (2) claimant can play softball but not as well as he did before the accident; (3) claimant doesn’t help around the house as much as he once did.
The Tantillo decision, supra, requires that the trial court give weight to lay testimony which has probative value in determining whether a worker is disabled. Such testimony should indicate that the person is unable to work, not that he just doesn’t work or engage in activity as much as he did before the mishap.
We find that in viewing the record as a whole the trial court erred in determining that the plaintiff had established his neurotic injury by a preponderance of the evidence. The judgment of the lower court is reversed and there is judgment rendered herein in favor of the defendants and against the plaintiff rejecting the latter’s demands at his cost.
REVERSED.
WATSON, J., concurred and assigned reasons.