SARTAIN, Judge.
Plaintiff appeals from a judgment of the district court denying him workmen’s compensation benefits for total permanent disability. The hazardous nature of his employment, the accident, and plaintiff’s initial injuries are not contested. What is at issue here involves a consideration of the injuries and its effect upon a pre-existing degenerative disc condition. Plaintiff claims that he is unable to perform his regular work as a result of the injuries. Defendants contend that as of the date workmen’s compensation benefits were terminated plaintiff’s condition had reverted to its pre-accident status. The trial judge agreed with defendants’ position and rejected plaintiff’s demands. We affirm.
Plaintiff is an operator of heavy construction equipment. On June 28, 1974, just before he was finishing his duties for the day, he heard a “popping sound” in his back while driving a grader over numerous ruts in the road surface. He claims that his injury was caused by the swaying and rocking motion of the grader over the uneven surface of the roadbed. He was initially seen by Dr. Jacob Harold Kety, a family practitioner, and subsequently, by Dr. Daryl S. Sinclair, an orthopedic surgeon. Both of these physicians reside in Covington, Louisiana. The major portion of plaintiff’s treatment was administered by Dr. Sinclair.
Dr. Kety saw plaintiff on June 29, 1974. Plaintiff was complaining of low back pain radiating down the leg. He was hospitalized, placed in traction, and administered muscle relaxants. Dr. Kety diagnosed his injury as an acute lumbo-sacral strain. He was discharged from the hospital on July 4, 1974. When his complaints persisted Dr. Kety referred him to Dr. Sinclair.
Plaintiff remained under Dr. Sinclair’s treatment until July 4, 1975. On this date Dr. Sinclair advised plaintiff’s employer’s insurer that plaintiff’s condition had returned to its pre-accident status and weekly payments were terminated.
The pre-existing degenerative disc condition was medically described by Dr. Kety as lumbar scoliosis, mild senile osteoporosis. The latter term is a disc disease occasioned by the thinning of the bone structure of the vertebrae. This condition is, of course, in no way related to the accident and is not unusual in persons plaintiff’s age (62).
Both of these doctors were very definite in their respective opinions that plaintiff’s continued complaints of low back pain are occasioned by this pre-existing degenerative condition and are in no way related to the initial injury. The doctors are further in agreement that plaintiff could not have worked prior to the accident without incurring discomfort and pain. They recommended that he not return to the strenuous work that he claimed to be performing pri- or to the accident. As a matter of fact, they were of the opinion that plaintiff should not have been doing that type of work even before the accident.
The aforementioned testimony of the doctors relative to pre-accident back complaints is in direct conflict with the testimony of the plaintiff and plaintiff’s wife. Plaintiff stated that he had never previously experienced low back pain and that his pre-existing condition never interfered with his work. His wife testified that plaintiff never complained of back discomfort. To the contrary, she said that he was a very active man both with respect to his work and his activities around the home.
In cases involving aggravation to a pre-existing condition, our law is well settled. A worker who is normally susceptible to disability from an accident is entitled to workmen compensation benefits even though the same accident or injury would have caused little or no harm to a healthy worker. Roberson v. Liberty Mutual Insurance Company, 316 So.2d 22 (3rd La.App., 1975); Kennedy v. Calcasieu Paper Co., 262 *1247 So.2d 800 (3rd La.App., 1972); Marcotte v. Atlas Construction Co., et al., 340 So.2d 341 (1st La.App., 1976). An employer takes an employee as he finds him. Bordelon v. Tulane Industrial Laundry, Inc., 275 So.2d 878 (4th La.App., 1973).
 R.S. 23:1221(2) defines permanent and total disability as “disability to do work of any reasonable character.” An injured employee is deemed totally and permanently disabled whenever he is unable to perform work of the same or similar description to that which he performed before the accident. Futrell v. Hartford Accident & Indemnity Co., 276 So.2d 271 (La.1973). He is not required to return to his regular work if he is unable to perform that work without substantial pain. Clement v. Fidelity & Casualty Co. of New York, 220 So.2d 575 (3rd La.App., 1969). The plaintiff, however, bears the burden of establishing a causal relation between the accident and the disability complained of. Francis v. Gerlach Meat Company, Inc., 319 So.2d 534 (2nd La.App., 1975), writs denied 322 So.2d 776 (La.).
With these principles in mind, we turn to the proof of causation. Professor Malone notes:
“Particularly all difficulties with reference to proof of causation of back injuries arise only in cases where the employer contends that the disability was a result of some pre-existing disease rather than accidentally hurt on the job. So long as it is conceded that the worker was healthy at the time of the accident, proof of causation is relatively simple.’’ Malone, Louisiana Workmen’s Compensation Law and Practice, Sec. 254. (Emphasis ours).
Prior to Tantillo v. Liberty Mutual Insurance Co. et al., 315 So.2d 743 (La.1975), plaintiff’s and his wife’s lay testimony as to his alleged current physical disability would not have been admissible as there is no conflict in the medical testimony on this issue. In overruling a long line of cases, beginning with Maricelli v. Standard Accident Insurance Company et al., 57 So.2d 926 (2nd La.App.1972), on this rule of evidence, the court in Tantillo stated: 315 So.2d 743, 748, 749:
“It is generally true that medical testimony which is not in conflict cannot be overcome by lay testimony. Nevertheless, in every case it is the totality of the evidence, medical and lay, which must be examined by the court in making its determination of whether to grant an award for disability. Great weight, almost to the point of exclusion of other evidence, is given to uncontradicted medical evidence which is directed toward a complex scientific question. However, in all cases, it is the judge’s function to determine the weight which is to be accorded the medical testimony as well as the lay testimony. Lay testimony has great probative value in establishing certain facts, such as the existence and location of pain and the actual ability or inability of a claimant to perform certain physical functions or to pursue his regular employment. See Larson, supra, at § 79.53. We conclude that lay evidence must be weighed with consideration for the medical fact to be established, of the conclusiveness and validity of the medical evidence and the materiality, relevance and reliability of the particular lay evidence, according to its focus, foundation and its source.”
We are also cognizant of the rule relative to the activation of a dormant pre-existing condition set forth in Peppers v. Toye Brothers Yellow Cab Company, 198 So. 177, 182 (Orls.App., 1940):
“It will be seen that the holdings in the foregoing decisions are based upon possibilities and that the courts have adopted the view that, where a person who enjoys good health suffers an accident and within a short time thereafter a dormant preexisting illness or old injury disconnected with the accident flares up or becomes active, it will be presumed that the flare up was not a coincidence and that it was set in motion as a direct result of the accident. And it is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by *1248 medical testimony that there is a reasonable possibility that the result claimed for did happen.”
Thus, it is essential to plaintiff’s cause that he show to a reasonable certainty that the degenerative disc condition of his back was asymptomatic at the time of the accident. Stated another way, that he was free from pain, was able to and was performing his work without substantial pain before the accident giving rise to this litigation. The resolution of this issue, because of the conflict between his and the doctors’ testimony, addresses itself essentially to a question of credibility.
Defendants contend (and the trial judge apparently agreed) that plaintiff’s testimony in this regard was seriously impeached. Plaintiff was administered the “toe test” by Dr. Kety. This type of examination is given to ascertain the objectivity of back complaints and to evaluate the reliability of the complaint. The patient is placed on his back on an examination table and the big toe of one foot or the other is depressed and/or flexed. The patient is asked to indicate at what point in the movement of the toe pain in the back is felt. Since there is absolutely no medical relationship between the toe and the back, a patient who, as did plaintiff, signifies pain in the back on the movement of the toe is obviously exaggerating.
The record satisfies us that the trier of fact applied the rule announced in Tantillo, above, and found plaintiff wanting in satisfying his burden of proof. We do not find this conclusion either unreasonable or manifestly erroneous and therefore affirm.
All costs of these proceedings are assessed against appellant.
AFFIRMED.