HOOD, Judge.
This is a workmen’s compensation suit instituted by Joseph K. Meshell against Phillip Rivers and his insurer, Southern Casualty Insurance Company. The trial court rendered judgment in favor of defendants, and plaintiff appealed.
The issue presented is whether plaintiff has been disabled since the date on which the payment of workmen’s compensation benefits was discontinued.
A tree fell on plaintiff on August 6,1973, while he was working as a log cutter for defendant Phillips. As a result of that accident, he sustained injuries consisting of fractures of the left ankle, fracture of the left tibia and fibula, open fracture of the right tibia, and comminuted fracture of the right fibula. He was treated promptly by Dr. Carson R. Reed, Jr., an orthopedic surgeon, and he remained under the treatment of that doctor for a period of about one year. The treatment administered included *204 surgery on both lower legs and hospitalization for about two weeks. Dr. Reed discharged plaintiff on August 8, 1974, as being able to return to his regular employment.
Defendants paid all of plaintiffs medical expenses, and they also paid workmen’s compensation benefits to him at the maximum rate from the date of the accident until December 14, 1975. No benefits have been paid to Meshell since the last mentioned date, however, and this suit was instituted on February 20, 1976.
The trial judge concluded that plaintiff has not been disabled since December 14, 1975, the date on which the payment of compensation benefits was discontinued, and he rendered judgment rejecting plaintiff’s demands. Plaintiff appealed, and that appeal is before us now.
Meshell was 23 years of age when the accident occurred. He had been working as a timber cutter and pulpwood hauler for about three years before he sustained the above injuries. His work required him to perform heavy manual labor. He testified that his legal now are stiff when he gets up in the mornings, and that he has to walk around a while to get relief from that stiffness. He also said that his legs pain him occasionally, and that he is not as agile as he was before the accident. He has not worked since he was discharged by Dr. Reed. He indicated, however, as we understand his testimony, that his primary reason for not working is that he can’t find a job. He stated that if he was financially able to do so he would purchase a truck now and would return to the pulpwood business. When asked if he could perform the duties of a pulpwood worker, he stated “I might could do it,’’ although he felt that it would be dangerous because he wouldn’t be able to run in the event a tree started to fall on him.
Dr. Reed, plaintiff’s treating physician, estimated that Meshell has a five percent permanent disability in his right leg, and a 10 to 15 percent disability of the left ankle. He assigned the above disability to his left ankle, however, not because of any loss of function, but solely because of the “possibility” that arthritis might develop in that ankle. He feels that the above conditions do not disable plaintiff from returning to work, and he is firm in his opinion that Meshell was able to return to heavy manual labor as a wood cutter as early as August 8, 1974, more than a year before the payment of compensation benefits were discontinued.
Dr. Heinz K. Faludi, a neurosurgeon, examined Meshell at the request of his own counsel on August 17, 1974, shortly after Dr. Reed had discharged him and while compensation benefits were being paid. The neurological examination he performed was negative as to injury or disability, but he nevertheless estimated that plaintiff had a 25 percent permanent disability of his left leg and a 20 percent disability of the right leg. He felt that plaintiff could return to heavy manual labor at that time, however, although he recommended that he not resume work as a log cutter. He stated, for instance, that:
“I thought he could do heavy type of work but I felt that we have to consider that his ankles have some loss of the springiness the ankle should have, a little limitation of the range of the ankle joint, and anything that would need running away from a falling tree would not be the best choice for him to use as a profession.”
. Dr. Faludi conceded that plaintiff’s problems were basically orthopedic in nature, and that he would “probably defer to an orthopedic opinion.”
Dr. Albert E. Dean, an orthopedic surgeon, examined plaintiff on February 5, 1975, at the suggestion of latter’s counsel, and he again examined him on May 21, 1976, at the request of defendants. He felt that plaintiff had a minimal amount of disability, his estimate being that he had a 5 to 10 percent permanent disability of the left ankle, and about a 2 to 3 percent disability of the right lower extremity. He concluded, however, that plaintiff was able to return to work as a wood cutter at the time he initially examined him, which was at least 10 months before the payment of compensation benefits was discontinued.
*205 Finally, Dr. Ruth Jackson, an orthopedic surgeon, examined plaintiff on March 25, 1976. She concluded that Meshell had a 35 percent permanent disability of his left leg and ankle, and a 25 percent permanent disability of his right leg and ankle. She felt that plaintiff “would have difficulty performing any type of work which required a great deal of walking or that might require running.” In her opinion plaintiff is not able to return to work as a timber cutter.
We agree with the trial judge that the preponderance of the medical evidence is that plaintiff has not been disabled since December 14, 1975, when the payment of compensation benefits was discontinued.
Plaintiff argues, however, that since there is a conflict in the medical testimony, the court should consider the lay testimony in determining whether plaintiff is disabled. We agree that the lay testimony may be considered in this case. See Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975). Here, however, the lay evidence consisted of the testimony of plaintiff and his two sisters, and the trial judge did not feel that it was sufficient to overcome the preponderance of the medical evidence. We also are not impressed with the lay evidence, and find that it does not establish that plaintiff is disabled.
Applicable here is the rule that in establishing disability in a workmen’s compensation case, the testimony of a treating physician, who has had the benefit of repeated examinations and sustained observation of the injured person, is accorded greater weight than that of an equally qualified physician who has seen the claimant but once, and then solely for the purpose of litigation. Moulard v. Massman Construction Company, 209 So.2d 742 (La. App. 3 Cir. 1968).
The factual findings of the trial court are entitled to great weight, and they will not be disturbed unless found to be clearly erroneous. Cooper v. Harris, 315 So.2d 331 (La.App. 3 Cir. 1975).
Applying the above rules to the instant suit, we conclude that there is no error in the judgment of the trial court which rejects plaintiff’s demands.
The judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.